# <u>TABLE OF CONTENTS OF EXHIBITS</u>

**EXHIBIT A**

Ithaca City Court documents filed by Cornell on November 2, 2007 . . . . . . . . . . . . 3

**EXHIBIT B**

Order unsealing Plaintiff's criminal records in Tompkins County Court; unsealed records filed by Cornell on December 12, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . .7

**EXHIBIT C**

June 3, 2008 Order Granting Special Motion to Strike in the 2007 Action  . . . . .  42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

STATE OF NEW YORK : COUNTY OF TOMPKINS
CITY COURT          : CITY OF ITHACA

THE PEOPLE OF THE STATE OF NEW YORK

- vs -                                         ACCUSATORY
                                               INSTRUMENT

Kevin G. VanGinderen   DOB 10/23/61
                                    Defendant

## ACCUSATION

BE IT KNOWN THAT, by this Accusatory Instrument,  Barkbara  Bourne
as the Complainant herein, accuses  Kevin G. VanGinderen
the above named Defendant, with having committed the offense of

Burglary in the third Degree

in violation of the Section  140.20    , Subdivision     of the    Penal    Law
of the State of New York,  xxViolationxxxxxxxxxxxxxxxMisdemeanx   a Class   D   Felony.

## FACTS

On or about the 5th   day of March 1983  , the said defendant did, in the City of Ithaca, County
of Tompkins, New York,

did knowingly enter or remain unlawfully in a building , to wit: defendant entered at approx.

2:00AM room 312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to commit

the crime of larceny therein by stealing books, with said office space belonging to Richard

J. Baker, with all action by defendant without authorization, are contrary to the provisions

of the Statute in case made and provided.

The above allegations of fact are made by the Complainant herein:

.... upon direct knowledge

XXXXX  upon information and belief, with the sources of Complainant's information and the grounds for his
belief being investigation of case(Cornell) 83-n422 and sworn confession of defendant
WHEREFORE, Complainant prays that a warrant be issued for the arrest of the said defendant.

                                          Barbara Bourne
                                              Complainant

## NOTICE
### (Penal Law, Section 210.45)

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE
OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A
FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE
TO BE TRUE.

Affirmed under penalty of perjury this  8th                Sworn to before me this              day

day of  March        , 19 83 .                             of                    , 19    .
                                            OR

            Barbara Bourne
              Complainant                          Judge or Justice, Desk Officer or Superior, or
                                                        other authorized person.

Court

5

## ADAMS, THEISEN & NASH

ATTORNEYS AND COUNSELORS AT LAW
301 THE CLINTON HOUSE
103 WEST SENECA STREET
ITHACA, NY 14850

607-272-3442

HENRY W. THEISEN
RALPH W. NASH

STEPHEN M. BOWMAN

ARMAND L. ADAMS
1911-1983

August 16, 1983

R. James Miller, Esq.
Ithaca City Prosecutor
120 East Clinton Street
Ithaca, New York 14850

Re:  People v. Kevin G. Vanginderen

Dear Jim:

This letter will confirm arrangements to be made in City Court to resolve this matter. Kevin will plead on Monday, August 22, to petit larceny in full satisfaction of any charges relative to thefts at Cornell University. Upon his plea the People will agree to a sentence of a one year conditional discharge.

I have made arrangements to have an appropriate accusatory instrument drawn. As I noted in our telephone conversation, this matter was originally handled by the District Attorney's Office, but as it is being resolved by a misdemeanor in City Court, they would like you to handle the plea and sentence for them.

Thank you for your attention to this matter.

Yours very truly,

ADAMS, THEISEN & NASH

Ralph W. Nash

RWN/dh

cc:  Robert C. Mulvey, Esq.
     Assistant District Attorney

EXHIBIT A,
Page 4

STATE OF NEW YORK : COUNTY OF TOMPKINS
CITY COURT         : CITY OF ITHACA

THE PEOPLE OF THE STATE OF NEW YORK

- vs -

KEVIN G. VANGINDEREN   DOB:  10-23-61

*Defendant*

ACCUSATORY
INSTRUMENT

## ACCUSATION

BE IT KNOWN THAT, by this Accusatory Instrument,    R. James Miller
as the Complainant herein, accuses   Kevin G. Vanginderen
the above named Defendant, with having committed the offense of

Petit Larceny

in violation of the Section   155.25          , Subdivision         of the      Penal          Law
of the State of New York,    a Violation     a Class A  Misdemeanor      a Class           Felony.

## FACTS

On or about the    5th     day of  March, 1983    , the said defendant did, in the City of Ithaca, County
of Tompkins, New York,

did commit the crime of petit larceny by stealing books located at room 312C, Fernow Hall,
Tower Road, Cornell University, located within the City of Ithaca, New York

The above allegations of fact are made by the Complainant herein:

upon direct knowledge

XX    upon information and belief, with the sources of Complainant's information and the grounds for his
belief being   investigation of case (Cornell) 83-422 and sworn confession of defendant.

WHEREFORE, Complainant prays that a warrant be issued for the arrest of the said defendant.

R. James Miller          *Complainant*

## NOTICE
(Penal Law, Section 210.45)

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE
OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A
FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE
TO BE TRUE.

Affirmed under penalty of perjury this

day of    August        , 1983 .

, R. James Miller
*Complainant*

Court

Sworn to before me this          day

of             , 19

OR

Judge or Justice, Desk Officer or Superior, or
other authorized person.

7

# CITY COURT
# OF
# ITHACA

The People of the State of New York

— against —

Karin Thardinders_____
_____ Defendant

Before __John_J._Sysak,_Jr.___
_____ Judge, City Court

Defendant arraigned __August_22,__19_03_

Counsel __Ralph_Nash,_Esq._____

Bail $_____ Posted _____ Remitted _____
not ___

The defendant heretofore on being brought
before the City Court Judge was informed as
follows:

1. You are charged with

Petit Larceny_____

Sec. 155.25___ Penal Law___

which is a felony
      misdemeanor   ☑
      violation

2. The information was read
to the defendant and a copy
furnished to him. ☐

3. The defendant was informed that being
found guilty or pleading guilty to such a
charge could result in a sentence and fine of
_____

4. You have the right to the aid of counsel or
to have an attorney represent you in every
stage of the proceedings. If you are financially
unable to afford counsel and your name is an
offense to retrieve your, the court will assign
counsel to you. You are entitled to an adjourn-
ment for a reasonable time in order to obtain
counsel or to hire any attorney and you are
entitled to communicate free of charge in writ-
ten telephone in order to obtain counsel and in
order to inform a relative or friend of your
arrest. ☐

Arraigned, appld. with Ralph Nash,
Esq. This charge filed with the
court in satisfaction of a charge
of Burglary Third Degree. Copy of
the chg. given to counsel. Waived
arraignment. Plea of guilty entered
to this charge ad agreed upon by
City Pros Miller and ADA, Frank
Jaithann. Def. sentenced to a Cond.
Dschg. — return all books that were
5. You are entitled to have a hearing
      without jury ☐
      jury trial ☐

6. If you are 16 years of age, but have not
reached 19, you may be entitled to be treated
as a Youthful Offender, and no such determi-
nation shall disqualify you from holding pub-
lic office, public employment or as a forfeiture
of right to receive any license granted by a
public authority and you cannot be denomi-
nated as a criminal nor shall such determina-
tion be deemed a conviction. ☐

8

EXHIBIT A,
Page 6

# EXHIBIT B

STATE OF NEW YORK
COUNTY COURT : COUNTY OF TOMPKINS

In the Matter of the Application of
Cornell University to Unseal Records
from the Proceeding Captioned:

2007 Misc. Cr. 667

"People of the State of New York
                    vs.
        Kevin Vanginderen"

                    Defendant.

## MEMORANDUM DECISION AND ORDER

Pursuant to CPL §160.50(1)(d), Cornell University seeks unsealing of criminal records previously sealed by this Court in 1983, relative to the above referred action against Kevin Vanginderen. Mr. Vanginderen has filed a civil action against Cornell (now pending in the United States District Court, Southern District of California), involving causes of action for invasion of privacy and libel. The claims involve a publication on the Internet of the Cornell Chronicle on March 17, 1983, which republishes an account of Defendant's arrest on a charge of burglary.

Defendant opposes the motion, claiming that the United States District Court has sole authority at this stage of the proceedings to order such "discovery".

Pursuant to the provisions of CPL §160.50, this Court is authorized to unseal such records upon proper grounds. A civil action which places in issue the contents of the sealed records warrants unsealing of such records to a party in such action. Commercial Union Insurance Co. v. Jones, 216 AD2d 967 (4th Dept. 1995). There is no controlling authority that would require this Court to defer such a decision to any other state or federal court. These are New York sealed criminal records, governed specifically by the provisions of New York statutes.

Accordingly, the Court concludes that Cornell has provided sufficient grounds to grant the motion unsealing such records, held both by the Tompkins County District Attorney's Office, and the records held by the Cornell University Police, relative to the above-captioned criminal matter.

**EXHIBIT E, PAGE 3**

This Decision constitutes the Order of this Court, entered upon notice to all parties.


ENTER.


DATED:   November 16, 2007

M. JOHN SHERMAN
TOMPKINS COUNTY JUDGE

2

**EXHIBIT E, PAGE 4**

# CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

### INVESTIGATION REPORT

**OTHER AGENCY** — Grad

**CASE NO.** 83-0422-

83-003457

**1. COMPLAINT**

| | | | | |
|---|---|---|---|---|
| C-1 | COMPLAINANT (LAST NAME) Baker | FIRST Richard | MIDDLE J. | DOB 12/4/53 |

ADDRESS 134 Judd Falls Road   COUNTY Tompkins   PHONE 257-2696

EMPLOYER 312-C Fernow Hall   ADDRESS 256-3191   OCCUPATION Grad Student

PLACE OF OCCURRENCE "SPECIFIC LOCATION" 312-C Fernow Hall (east)

DATE REPORTED 3/5/83   DAY REPORTED Sat.   TIME REPORTED 1400   DATE OCCURRED 3/4-3/5/83   DAY OCCURRED Fri-Sat   TIME OCCURRED 2400-1200

RECEIVED BY H. Browne   HOW RECEIVED In Person   WEATHER ☐ CLEAR ☐ FOG ☐ RAIN ☐ SLEET ☐ CLOUDY ☐ SNOW

CHARACTER OF CASE Burglary

**2. MO**

TYPE OF BLDG. Academic   SECURED Yes / OPS   ENTRY Pink   OCCUPIED / EXIT

MODE OF ENTRY OR MANNER COMMITTED climbed over partition and removed P-1 & P-2

TOOL, WEAPON OR METHOD USED

**3. PROPERTY**

CODE: STOLEN (S)   USED IN CRIME (C)   CRIM. MISCH. (M)   RECOVERED (R)   EVIDENCE (E)   OTHER (O)

| | CODE | QTY | DESCRIPTION | I.D. - SERIAL NUMBER | MONETARY VAL. |
|---|---|---|---|---|---|
| P-1 | S | 1 | Biometry 2nd ed. by Robert R Sokal & F. James Rohlf | | 31.95 |
| P-2 | S | 1 | The Life of Birds 3rd ed. by Joel Carl Welty | | 22.45 |

**4. VEH** V-1   ☐ USED IN CRIME ☐ ACC. NON-MV ☐ CRIM. MISCH. ☐ STOLEN ☐ RECOVERED ☐ OTHER

DESCRIPTION - MAKE   YR. MFG.   REG. NO.   STATE

COLOR   BODY - MODEL   VIN - ID NO.   STOLEN MV - KEY IN IGNITION YES ☐ NO ☐   RECOVERED - RUNNING CONDITION YES ☐ NO ☐

**5. WEAPON** W-1   ☐ USED IN CRIME ☐ LAWFUL SURRENDER ☐ UNLAWFUL POSS. ☐ STOLEN ☐ OTHER

☐ REVOLVER ☐ PISTOL ☐ RIFLE ☐ SHOTGUN ☐ OTHER

MAKE - TYPE/MODEL   CAL.-GA.   OWNER OR REGISTRANT

SERIAL NO.   UNLOADED ☐ LOADED ☐   ADDRESS

FINISH: BLUE ☐ SILVER ☐ ☐ OTHER   TOT. CAPACITY   PISTOL PERMIT NO.   DATE ISSUED

ROS. FIRED   COUNTY OF ISSUE   UNEXPENDED RDS.

**6. DOCUMENT** D-1

TYPE DOCUMENT   NAME OF RECEIVER   REASON: ☐ NO ACCT. ☐ ACCT. ☐ INSUFF. FUNDS ☐ FORGERY

NAME OF MAKER - I.D. OR ADDRESS GIVEN   IDENTIFIABLE: YES ☐ NO ☐

BANK DRAWN ON + ADDRESS   DOC. NO.   PHOTO + SUSPECT YES ☐ NO ☐

DOCUMENT AMOUNT   MONEY, PROPERTY OR SERVICE OBTAINED

**7. DAMAGE** DESCRIBE OR LIST PHYSICAL DAMAGE OR ANY OTHER LOSS

COPY

54.40

**8. INSUR.** PROPERTY INSURED YES ☐ NO ☐   NAME OF INSURER   AMT. INSURANCE   TOTAL VALUE 54.40

**9. DISPO** NO.   DATE   DISPOSITION   CLOSED ☐ C.R.C. ☐ UNFOUNDED ☐ INACTIVE ☐ PENDING ☐   3-5-83

**10. WITNESS** WT-1   NO.   NAME (LAST, FIRST, MIDDLE) + ADDRESS   AGE   DOB

**DO NOT REMOVE**

### EXHIBIT F, PAGE 5

CODE:  ASSAULT        (A)
       HOMICIDE       (H)
       SUICIDE        (S)
       ATTEMPTED SUICIDE  (AS)

NATURAL DEATH        (ND)
ACCIDENT VICTIM      (AV)
OTHER (O)

**11**

**VICTIM**

| S-1 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|---|---|
| NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | | |
| DATE OF DEATH | CORONER OR M. E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ | |

| S-2 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|---|---|
| NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | | |
| DATE OF DEATH | CORONER OR M. E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ | |

| S-3 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|---|---|
| NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | | |
| DATE OF DEATH | CORONER OR M. E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ | |

**12**
**TITLE**

CODE:  UNK. SUBJ. (U)    PERPETRATOR (P)    DEFENDANT (D)    WANTED-WARRANT (W)    CRIM. SUM. (S)    ACCOMPLICE (A)    OTHER (O)

| | CODE | NAME (LAST, FIRST, MIDDLE), ADDRESS, ALIAS | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|
| T-1 | P | Vanginderen, Kevin Gordon CUID 222416  A&LS | | M | 22 | 10.23.61 |
| T-2 | | 17 South Ave Ithaca NY        273-9597 | | | | |
| T-3 | | | | | | |

**13**
**WANTED**

| TITLE NO. | RACE | HT. | WT. | HAIR | EYES | CRIME | | SECTION | LAW |
|---|---|---|---|---|---|---|---|---|---|
| JUDGE - NAME, ADDRESS AND TITLE | | | | | | | COUNTY | DATE ISSUED | EXTRADITE YES ☐ NO ☐ |
| TITLE NO. | RACE | HT. | WT. | HAIR | EYES | CRIME | | SECTION | LAW |
| JUDGE - NAME, ADDRESS AND TITLE | | | | | | | COUNTY | DATE ISSUED | EXTRADITE YES ☐ NO ☐ |

**14**
**NYSPIN INQUIRY**

| | | NO. | FILE | DATE | STATION | | NO. | DATE |
|---|---|---|---|---|---|---|---|---|
| NYSIIS | YES ☐ NO ☐ | | | | | C A N C E L | | |
| NCIC | YES ☐ NO ☐ | | | | | | | |

**16**
**ID**   PHOTOS TAKEN  YES ☐  NO ☑    BY WHOM        DUSTED FOR LATENT PRINTS  YES ☐  NO ☐    BY WHOM

**17**
**OA**   OTHER AGENCY NOTIFIED   NONE    RESPONDED  YES ☐  NO ☑   IF "YES" NAME OF PERSON IN CHARGE - IF "NO" NAME OF PERSON NOTIFIED

**18**
**SLA**   IF INCIDENT OCCURRED WITHIN LICENSED S.L.A PREMISES    OWNER'S NAME    BUSINESS NAME    LIC. NO.

**19**
**NARRATIVE**

At approx 1400 hrs this date, while doing follow up work on CR # 83-421 (Burglary 312-F Fernow) this officer spoke with C-1. C-1 stated that upon his arrival to his office at approx noon this date he noticed the books on his shelf to be out of their normal order. Upon checking the shelf P-1 & P-2 were found to be missing. C-1 stated that he is positive the theft occured sometime late Friday 3/4/83 to early Saturday 3/5/83 as he used P-1 on 3/4/83.

All indications are that T-1 entered the office by climbing over the partition from the open hall way.

**20**
**ENC**

1. Signature list from Triangle book shop (copy)

SIGNATURE AND RANK
Barbara Crrusne

| SHIFT | SHIELD NO. | | APPROVED |
|---|---|---|---|
| | 20 | Rd DO  l | 3/5/83 |

**EXHIBIT F, PAGE 6**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

## SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_      PAGE _3_

CASE NO. _83-422_
OTHER AGENCY _83-003451_

_1445 hrs  3/5/83_

This officer spoke with _Terry Hoover_ at Triangle Books to advise him of the stolen books. Mr. Hoover stated that both P-1 and P-2 were sold to him sometime before noon 3/5/83. Upon inspection of the books, the name _Richard Baker_ was partially scratched out, establishing these books as P-1 & P-2. Mr. Hoover further stated that the subject who sold the books was tall, approx 5'11" - 6 ft med. build with sandy colored hair. Mr. Hoover stated he felt he would recognize T-1 should he see him again. Mr. Hoover also provided this officer with a copy of the sign-in log used when books are sold to Triangle. The signature was not legible but the initials were obviously K. V. In the margin of the page was the ID # 222416. Mr. Hoover stated that T-1 had produced a college ID, but could not remember which school.

_1530 hrs  3/5/83_

This officer checked the computer printout under the letter V to attempt to match the ID number. The result was the above listed information on T-1.

MASTER FILE
DO NOT REMOVE

_Barbara J. Bourne_ PO
Investigating Officer

_R. J. ___
Supervisor

Date of Investigation _3/5/83_

Date of Approval _3/5/83_

1/76-5M

**EXHIBIT F, PAGE 7**

EXHIBIT B,
Page 11

End #1
CR # 83-422

| | | |
|---|---|---|
| 22 | x | Matt Heyland |
| 25 | x | Tony Semerad |
| 17 | x | Beth Linton |
| 3 | | John Higgins |
| 13.50 | x | Benjamin Bodry |
| 2 | | |
| 13 | | x Keith Hunn |
| 26 | x | John B. Gallagher |
| 12 | s | Matthew Dickey |
| 20 | | Kidd Hunn |
| 19 | x | Andrew L. Cannie |
| 22 | x | Paul Harriott |
| 14 | x | N Razak |
| 4.50 | | Gerald Meyer |
| 2 | x | Rafai Mann |
| 50 | x | Zin Dah |
| 08 | x | Kurt Vaziri |
| 43 | x | Jonatha S Harada |
| 19 | x | Valerie Glengaras |

MASTER FILE
DO NOT REMOVE

**EXHIBIT F, PAGE 8**

DO NOT REMOVE



**MARILYN J. TRIVENTI**
Bergenfield, NJ
Camping, Student Government
Pre-Vet

**GLENN M. TROOST**
Staten Island, NY
Animals, Dancing
Pre-Law

**GILBERT T.Y. TSO**
Foster City, CA
Debating, Math
Engineering, Economics

**PHILIP W. TSUNG**
Norwood, NJ
Baseball, Chess
Chemistry

**PENNY J. TUCKER**
Skaneateles, NY
Animals, Soccer
Pre-Vet

**GLENN E. TUCKMAN**
Norwalk, CT
Music, Swimming
Hotel Administration

**DEBORAH A. TUOHEY**
N. Syracuse, NY
Animals, Horseback Riding
Science

**KEITH P. TURKEL**
Scarsdale, NY
Basketball, Soccer
Pre-Law

**STEPHEN R. TURNBULL**
Palo Alto, CA
Camping, Publications
Engineering

**JOHN J. TURNER**
Port Washington, NY
Animals, Running
Biological Sciences

**SUSAN H. TYLER**
La Jolla, CA
Hiking, Student Government
Engineering

**STEVEN W. TYNDALL**
Boca Raton, FL
Music, People
Science

**RANDI S. URBAN**
N. Woodmere, NY
People, Publications
Business

**OWEN URBAY**
West New York, NJ
Basketball, Scuba Diving
Pre-Med

**DAWN C. VADNEY**
Avon, NY
Photography, Publications
Consumer Economics

**JEFFREY L. VALLET**
Endwell, NY
Golf, Science
Pre-Vet

**DAVID M. VANBUREN**
Atlanta, GA
Football, Travel
Hotel

**GREGORY D. VAN DUYNE**
Savannah, NY
Basketball, Chess
Pre-Med

**KEVIN G. VANGINDEREN**
Carmel, NY
Animals, Baseball
Pre-Med

**GERRIT VAN LOON**
Claverack, NY
Skiing, Frisbee
Pre-Med

**CATHERINE VARDAKIS**
Elmira, NY
Dancing, Languages
Business

**SUSHEELA D. VASAN**
New Canaan, CT
Dancing, Gymnastics
Engineering

**CAROLEEN L. VAUGHAN**
Elmira, NY
Dancing, Drama
Humanities

**JOHN A. VAUGHAN**
Edmond, OK
Camping, Football
Engineering

64

**EXHIBIT F, PAGE 9**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

## SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_          PAGE _6_

CASE NO. _83-422_
OTHER AGENCY _83-003451_

1640 hrs   3/5/83

This officer returned to Triangle Books and again spoke with Mr. Terry Hoover. This officer showed Mr. Hoover the enclosed 1979 picture of T-1. Mr. Hoover stated that although the hair is not the same, the facial features match. Mr. Hoover further stated he is certain that T-1 is the same subject who sold P-1 & P-2 to him earlier this date.

**MASTER FILE**
**DO NOT REMOVE**

Barbara J. Bourne    PO
Investigating Officer        Date of Investigation _3/5/83_

Supervisor        Date of Approval _3/6/83_

1/76-5M

**EXHIBIT F, PAGE 10**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE ____Burglary_____ PAGE ___7____

CASE NO. __83-422__
OTHER AGENCY __83-003451__

0730 hrs. 3/6/83

A check was made of the lacation file for additional thefts from
Fernow Hall.  The following cases were found:

83-303, 83-306, 83-311, 83-333, 83-339, and 83-368.

Prior to 83-303 there were no reported thefts  from 1981-1983.

83-306, investigated by PO Wittner includes a receipt for the sale
of four books to the Campus Store.  This receipt shows an ID # of 22416.
(Note:  T-1's ID number is 222416).  PO Wittner indicated in his
narrative that the clerk had not written down the full six digits of the
subject's ID number.  Further, the receipt shows an illegible signature
of a subject with the initials K.V.  A comparison was made of T-1's
signature with that from the Campus Store receipt.  While not identical
the similarities, particularly in the formation of the K and the V, would
indicated that both were made by the same individual.

The books recovered at the Campus Store in conjunction with 83-306
resulted in cases 83-333, 83-339 and 83-368, all previously undetected
thefts.

The theft reported in 83-303 occured within the same time frome as
83-306 and its related cases.

The theft in 83-311 occured on or about 2/3/83 from room 306 Fernow;
the site of several of the other related thefts.

It should be noted that all of the thefts from Fernow during this
period have been from normally unsecured rooms and offices easily accessible
other that through their doors.  Note:  the 312 office complex can be easilyy
accessed by clombing over the partitions between offices.  Three of the thefts

MASTER FILE DO NOT REMOVE

_Barbara J Bourne_          PO          Date of Investigation  3/6/83
Investigating Officer

_Al Rg Sims_                             Date of Approval  3/6/83
Supervisor

1/76-5M

**EXHIBIT F, PAGE 11**

EXHIBIT B,
Page 15

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____Burglary_____    PAGE ____8____

CASE NO. ___83-422___
OTHER AGENCY ___83-003451___

have occured in this complex (83-303, 83-421, and 83-422).

It is the opinion of this officer that all eight cases are related due to similaritites of time span, type of items taken and general method of the thefts.

<u>1130 hrs. 3/6/83</u>

PO Wittner contacted via telephone. PO Wittner stated that at the time of the incidents in 83-306 the clerk at the Campus Store stated he could positivly identify the subject who sold him the books should he see him again.



Barbara J Bourne        PO        Date of Investigation  3/6/83
_____Investigating Officer_____

B.R.G Sims                         Date of Approval  3/6/83
Supervisor

**EXHIBIT F, PAGE 12**

EXHIBIT B,
Page 16

*Voluntary Statement*

STATE OF NEW YORK
COUNTY OF *Tompkins*
CITY, ~~TOWN,~~ or ~~VILLAGE~~ OF *Ithaca*
Date *3/7/83*  Time *9:30 AM*  Place *TRIANGLE BOOK SHOP*
I, *TERRY HOOVER*  am *40* years of age, born on *JAN 6, 43*
my address is *38 SALO DR  TRUMANSBURG, NY*
my occupation is *Ass't MGR*, and degree of education is *BS*
I have been duly warned by *B.J. Bourne* who has identified
himself as *Patrol Officer*

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

On Sat March 5th a man came to Triangle Book Shop to sell books. The books were Welty, "Life of Birds, Sokol "Biometry" and Davis "Quant Models for Mgt." I bought the books and paid $28.00 for them. I also ask for the sellers ID and made a note of the ID number beside his signature on our buy back sheet. He was a moderately tall man with dark hair. Later, after the books were reported stolen, I was shown a picture by Cornell Safety from the freshman registry of the suspect. I was sure that it was the same man from whom I bought the above books.

MASTER FILE
DO NOT REMOVE

I have read this statement consisting of *1* page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this _____ day of _____, 19___

Title: _____

Affirmed under penalty of perjury
this *7th* day of *MARCH*, 19 *83*

Signed by *Terry Hoover*

Page *1* of *1* page(s)

Witness: *Barbara J Bourne*

Witness: _____

5M - 3/82

**EXHIBIT F, PAGE 13**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_                                    PAGE _9_

_0715    3/8/83_

The results of this investigation to this point
show that   T-1

MASTER FILE

DO N~~~~~~

RtC

Kevin G. Vanginderen   dob 10/23/61
603 Winston Ct. Apt. #3      (P)
Ithaca, NY
Ag & LS '83
CU ID   222416

is in some way involved with the following
cases:

83-303 — Burglary from 312 C Fernow
tape deck and calculator
on or about  2/10-2/12/83

83-306 — Petit Larceny from 207 Fernow
2 text books  on or about
2/11/83

83-311 — Petit Larceny from 306 Fernow
1 text book  believed to have been
taken on 2/2 or 2/3/83.

83-333 — Petit Larceny from 306 Fernow
1 text book  unknown date
recovered in conjunction with 83-306

83-339 — Petit Larceny from 306 Fernow
2 text books unknown date recovered
in conjunction with 83-306

83-368 — Petit Larceny from 119 Fernow
1 text book  on or about 2/10/83
recovered in conjunction with 83-306

Barbara J. Boers                    PO        Date of Investigation _3/8/83_
Investigating Officer

Barton R. Ingram                    SP.       Date of Approval _3/8/83_
Supervisor

1/76-5M

CASE NO. 83-422
OTHER AGENCY 83-003457

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_____ PAGE ___10___

CASE NO. ___83-422___
OTHER AGENCY

83-421 – Burglary room 312-F Fernow
1 stereo tape player/recorder on or
about 3/5/83.

83-422 – Burglary room 312-C Fernow
2 text books on or about.
3/5/83

83-426 – Burglary room 312:B Fernow
4 text books on or about 3/5/83

83-446 – Pet. Larceny room 308-Fernow
1 textbook sometime during
last 2 weeks. /jen



MASTER FILE
DO NOT REM-

_Barbara J Baum_  PO
Investigating Officer

_Berten R Sugerud, St_
Supervisor

Date of Investigation 3/8/83

Date of Approval 3/8/83

1/7G-5M

**EXHIBIT F, PAGE 15**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____ Burglary _____   PAGE _ 11

CASE NO. _ 83-422
OTHER AGENCY

_0730   3/8/83_

This officer and PO Wittmer responded to 17 South Ave and spoke with the House President. The House President stated that T-1 resided at 603 Winston Court.

_0800_

This officer and PO Wittmer responded to the Winston Court Apt. Office at 103 Salem Dr. Mr. Lucente advised us that T-1 resided in Apt. 3 of bldg. 603.

_0820_

This officer and PO Wittmer arrived at 603 Winston Ct. Apt. 3 to speak with T-1.

_0825_

T-1 was advised of his rights by PO Wittmer and agreed to come to Barton Hall for further questioning.

_0835_

T-1 was interviewed by PO Wittmer (refer to page 15) in the presence of this officer.

_0850_

T-1 orally admitted to several thefts of books, a calculator, and two tape decks from both Fernow and Bradfield. T-1 was again given his rights by this officer

Barbara Burns    PO
Investigating Officer
Barton R. Ingersoll   Lt.
Supervisor

Date of Investigation ___ 3/8/83
Date of Approval ___ 3/8/83

MASTER FILE
DO NOT ...

**EXHIBIT F, PAGE 16**

EXHIBIT B,
Page 20

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____ *Burglary* ~~MASTER FILE~~ 12
~~DO NOT REMOVE~~

CASE NO. 83-422
OTHER AGENCY

0900
     T-1 signed a Waiver of Rights form.
     T-1 then prepared a written statement confessing
to the crimes.

0930
     District Attorney Bucko notified at this time.

0950
     This officer, PO Wittner and T-1 returned to
his residence to pick up items T-1 stated he
had obtained in other burglaries and had kept.
T-1 signed a consent to Search Form.
     Found in T-1's bed room were the following

     1) TI 55 Calculator     serial # 3896689     #83-240
     2) Sanyo Tape recorder (cassette)     #83-241
     3) JVC stereo Cassette player/recorder     #83-236
                    serial # 17631022

1000
     Upon return to Barton Hall the above listed
items were tagged as evidence (tag #83-236)
and a receipt given to T-1.     83-240
                                   83-241

1020
     T-1 was fingerprinted and photographed by
PO Wittner.

1035
     T-1 interviewed by Lt. Boice, refer to encl. #6
for details

_Barbara J Bauer_      PO      Date of Investigation 3/8/83
Investigating Officer

_Barton R. Ingersoll St._      Date of Approval      3/8/83
Supervisor

**EXHIBIT F, PAGE 17**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_ _____ PAGE _13_

CASE NO. _83-422_
OTHER AGENCY

V.P. Gurowitz advised of this case by Capt. Murphy.

**1200**

T-1 was transported to City Court for arraignment before Judge Ward. T-1 was released in his own recognizance to appear at a Preliminary Hearing in City Court on March 18, 1983.

T-1 remained with Ithaca Police Dept. Detectives for further processing.

MASTER FILE
DO NOT REMOVE

**1420**

This officer and PO Wittner responded to 312-C Fernow Hall and spoke with C-1.

C-1 stated that he had at no time authorized T-1 to remove any items from his office.

C-1 was shown the items obtained at T-1's residence for possible identification. C-1 identified the calculator and the Sanyo tape deck as those that were taken from his office on or about 2/10/83. (Refer CR 83-303) Enclosed is a signed statement to this effect from T-1.

**1500**

During the course of the interviews with T-1, T-1 repeatedly confessed to taking text books from room 411 Bradfield Hall during the course of the past year.

Barbara J. Baum _____ PO    Date of Investigation _3/8/83_
Investigating Officer

Seton B. Ingersoll Lt. _____    Date of Approval _3/9/83_
Supervisor

**EXHIBIT F, PAGE 18**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_          PAGE _14_

CASE NO. _83- 422_
OTHER AGENCY

This confession establishes T-1 as the perpetrator of the following cases.

82-1670 — Petit Larceny from 411 Bradfield 3 text books unknown date

82-1685 — Petit Larceny 411 Bradfield 1 textbook on or about 10/28 - 11/15/82.

82-1686 — Petit Larceny 411 Bradfield 3 text books on or about 11/11 - 11/18/82

82-856 — Burglary 411 Bradfield 4 text books, 1 hand lens 1 dissecting kit sometime during May 1982.

82-868 — Petit Larceny 411 Bradfield 7 text books, unknown date reported 6/4/82.

1530
Dean Drinkwater notified of this case by Lt. Boice.

Barbara J. Bourn          PO          Date of Investigation  3/8/83
Investigating Officer

Barton N. Ingersoll Sr.                 Date of Approval  3/8/83
Supervisor

1/76-5M

**EXHIBIT F, PAGE 19**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

## SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE __Burglary__                                    PAGE ___15___

CASE NO. __83-422__    OTHER AGENCY

0855 hrs, 3-8-83, the defendant was interviewed by this officer about the books he sold over the past several weeks He stated that he saw a list of books for sale in the laundry with a telephone number on it several weeks ago and that he called the number and arranged a meeting at Uris library with a hispanic male, bought books then resold them. He then said that he remembered the number on friday and called again, met with the subject and bought the books in CR# 83-422, took them to triangle and sold them on saturday.

This officer then asked the defendant how it was possible that he bought the books on friday when C-1 stated that they were taken sometime late friday night or saturday morning. The defendant then admitted that he took the books from Fernow hall that he did not buy them. He said " I went into the rooms and took the books, stereo, calculator and tape deck. I am a poor student and sold the books to get money."

He was then asked about other thefts from fernow hall and he stated that he took the books. He was then asked about the book thefts from Bradfield Hall for the period from 1-2-82 to 11-15-82. He said that he took the books. when asked how he gained access to the building he said that he had worked in the lab (room 411) and was given a key to the building and the room, that when he quit no one asked him for the keys back. He was then asked how he got into Fernow Hall. He said that by using his key to the outside door to Bradfield and going into the basement that there is a tunnel that goes to Fernow and that the only door there has a crash bar on it. Once inside fernow he went to the rooms and took the books.

Wayne L. Weltier
Investigating Officer                    Date of Investigation 3-8-83

Baxter N. Ingersol
Supervisor                               Date of Approval

MASTER FILE
DO NOT REMOVE

1/76-5M

**EXHIBIT F, PAGE 20**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_____    PAGE ___16___

The two yale keys numbered BJ-1 and 6FX were taken as evidence and assigned evidence tags 83-237. When asked why he took the books he stated again that he was just a poor student and that he took them to have money to live on and he took the stereo, tapedeck and calculator for his own use. He wanted to know what took us so long to catch him, that he expected to be caught a year ago, and since he didnot he continued by taking things from Fernow Hall.

CASE NO. 83-4622
OTHER AGENCY

MASTER FILE
DO NOT REMOVE

_Wayne L. Wiltner_
Investigating Officer    Date of Investigation   3-8-83

_Barton R Ingersoll_
Supervisor    Date of Approval   3-8-83

1/7G-5M

**EXHIBIT F, PAGE 21**

EXHIBIT B,
Page 25

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_____    PAGE _17_

CASE NO. 83-422    OTHER AGENCY

The following enclosures are continued from page #1.

#5. Voluntary Statement from C-1

#6. Interview of Defend. by Lt. Boice

#7. Advice of Rights form

#8. Consent to Search form

#9. Oral Admissions form

10. Written Admissions forms.

11. Accusatory Instrument.

12. Affidavit of Service form

**MASTER FILE DO NOT REMOVE**

Closed refer to Ct.

TOTAL CASE Sent to I.P.D. 4/8/83 1700 hrs, B

_Barbara J. Baum_ PO    Date of Investigation 3/8/83
Investigating Officer

_Barton R. Dryessof Jr_    Date of Approval 3/8/83
Supervisor

1/76-5M

**EXHIBIT F, PAGE 22**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE __Burglary_____    PAGE __18__

CASE NO. 83-422    OTHER AGENCY

1335 hrs, 3-9-83, Dawson Deanna K, 308 Fernow Hall reported that the text book, Natures & Properties of Soils, had been taken out of 308. CR # 83-446. This book has not been recovered.

0930 hrs, 3-10-83, this officer spoke with Hollenbeck, Lorraine A., Secretary, Plant Breeding, 252 Emerson Hall. Ms. Hollenbeck is incharge of key issue for Plant Breeding. Ms Hollenbeck said that the defendant was hired by Plant Breeding on 10-2-81 and worked untill 10-13-81. She said she could not be sure, but the records show that the defendant was terminated because of illness and she thought he was the one with mononecleosis. She also said that the defendant was issue the keys and that the department never asked for them back.

It is believed that the defendant was the perpetrator of the following thefts.

Bradfield Hall
82-856
82-868
82-1670
82-1685
82-1686

Fernow Hall
83-303
83-306
83-311
83-333
83-339
83-368
83-421
83-422
83-426
83-446

DO NOT REMOVE INK

In his statement to Lt Boice ENc#6, page 4 of this report he admitted to burglarizing Bradfield Hall 3 or 4 times and Fernow Hall 3 times.

_Wayne L. Wittner_
Investigating Officer

Date of Investigation _3-11-83_

_____
Supervisor

Date of Approval _3-11-83_

1/76-5M

## EXHIBIT F, PAGE 23

*ENC #3*

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN, or VILLAGE~~ OF _Ithaca_
Date _3/7/83_  Time _9:30 AM_  Place _Triangle Book Shop_
I, _Terry Hoover_, am _40_ years of age, born on _Jan 6 43_
my address is _38 Salo Dr Trumansburg NY_
my occupation is _Ass't Mgr_, and degree of education is _BS_
I have been duly warned by _R Bourne_, who has identified
himself as _Police Officer_

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

_On Sat March 5th a woman came to Triangle Book Shop to_
_sell books. They were ___ the fields of School Geometry_
_and Dance "Quant Models of Traff ___ bought the books and_
_paid $83 for them. I obtained the Seller ID and_
_is a note of the ID number from the signature on our_
_buy back sheet. He was a moderately tall ___ with dark_
_hair. Later after the book was spotted stolen I was_
_shown a picture by Carol Sattler of the freshman_
_suspect of the ___ I was told that it was the same_
_person whom I bought the above books ___._

MACHINE FILE
DO NOT REMOVE

I have read this statement consisting of ___1___ page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me this _____ day of _____, 19___

Affirmed under penalty of perjury this _7th_ day of _MARCH_, 19 _83_

Signed by _Terry Hoover_

Title: _____

Page _1_ of _1_ page(s)

Witness: _Barbara Bourne_
Witness: _____

5M - 3/82

**EXHIBIT F, PAGE 24**

EXHIBIT B,
Page 28

STATE OF NEW YORK
COUNTY OF __TOMPKINS__
CITY, TOWN or VILLAGE _____   ITHACA
Date _3/8/83_        Time _9:10 AM_       Place  Barton Hall
I,    Kevin G. Vanginderen        am  _21_  years of age, born on _10/23/61_
my address is __603-3 Winston Court Apartments__
my occupation is  Student                    , and degree of education is _college senior_
I have been duly warned by _____ Barbara J. Bourne _____ , who has identified
himself as          Patrol Officer

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and
that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.

I, Kevin G. Vanginderen, admit to taking a few books, a calculator, and two small
cassette decks from Fernow Hall. I will return the calculator and tape decks for
I still possess them. I also admit entering a lab at Bradfield Hall for the
purpose of taking a few textbooks. All of these textbooks were sold to the
Campus Store and Triangle Book Store for cash. This cash allowed me to survive
in poor times for I am an extremely poor college student deeply in debt with
little other options.

OFFICER WITTNER: You stated that you took books from Bradfield Hall. How did you
            gain entrance to Bradfield and the labs?

VANGINDEREN: I had a key for the building and lab given to me when I had a lab
            job there two years ago and nobody asked for its return.

WITTNER: The only things you took out of Bradfield were the books?

VANGINDEREN: From that one lab.

WITTNER: You didn't take anything else?

VANGINDEREN: Not in Bradfield.

WITTNER: How did you gain entrance into Fernow Hall?

VANGINDEREN: A tunnel leading from the basement of Bradfield Hall to Fernow
            which is unlocked. I gained entrance through it.

WITTNER: The rooms you took the books from in Fernow -- were the rooms locked?

VANGINDEREN: No. The rooms I went into on the main corridor were unlocked. The
            ones at the ends of the corridor had spaces above the doors, which I

I have read this statement consisting of _2_ page(s) and the facts contained herein are true and correct. I have also been told and I
understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.

Subscribed and sworn before me                 Affirmed under penalty of perjury
this_____day of_____ , 19___               this _____ day of _March_ , 19_83_

                                               Signed by _Kevin Vanginderen_

_____                  Page _1_ of _2_ page(s)

Title: _____                  Witness: _H W G Price_

                                               Witness: _____

~M - 3/72                **EXHIBIT F, PAGE 25**

STATE OF NEW YORK
COUNTY OF ___TOMPKINS____
CITY, TOWN, or VILLAGE OF _____ ITHACA____

**MASTER FILE**

**DO NOT REMOVE**

Date __3/8/83__ Time __9:10 AM__ Place ___Beacon___

I, ___Kevin G. Vanginderen_____, am __21__ years of age, born on __10/23/61__,

my address is_____   ___603-3 Winston Court Apartments_____

my occupation is___Student_____, and degree of education is __college senior__.

I have been duly warned by____Barbara J. Bourne_____, who has identified

himself as_____Patrol Officer_____

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and
that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.

        jumped.

WITTNER:  All the books you took last year and this year were sold to Campus

        Store and Triangle Book Store.

VANGINDEREN:  Yes.

WITTNER:  Not to a private individuals

VANGINDEREN:  No.

I have read this statement consisting of __2__ page(s) and the facts contained herein are true and correct. I have also been told and I
understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.

Subscribed and sworn before me
this_____ day of_____, 19____

Title:_____

Affirmed under penalty of perjury
this __8th__ day of __March__, 19 __83__

Signed by _Kevin Vanginderen_

Page __2__ of __2__ page(s)

Witness: _JF W.G. Snel_

Witness: _____

5M - 3/72

**EXHIBIT F, PAGE 26**

EXHIBIT B,
Page 30

*Voluntary Statement*

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN, or VILLAGE OF~~ _Ithaca_
Date _3-8-83_   Time _1420_   Place _Fernow Hall_
I, _Richard J Baker_ am _29_ years of age, born on _12/4/53_,
my address is _134 Judd Falls Rd., Ithaca, NY_,
my occupation is _Graduate Student_, and degree of education is _grad. student_.
I have been duly warned by _Wayne L. Wittner_, who has identified
himself as _Cornell Patrol Officer_.

~~that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and~~
~~that I have the right to talk to a lawyer for advice before making this statement.~~ Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.

RJB On 2/10/83, I was in my office working. On that day,
I used my TI-55 calculator and a Sanyo cassette tape deck I had
borrowed. When I returned to my office on 2/13/83, both
were missing. I reported the theft to Cornell Public Safety on
2/14/83. On 2/24/83, I again worked in my office.
On 3/25/83, I returned to my office and found two books:
Life of Birds, Welty and Biometry, Sokol-Rolf missing. I
immediately reported these thefts to Public Safety. RJB
RJB At no time during this period had I given permission
to anyone to borrow any of this material. RJB
RJB At ~2:20 pm, Officers Bourne & Wittner brought in my
tape player and calculator. I positively identified these
as mine. RJB

I have read this statement consisting of _1_ page(s) and the facts contained herein are true and correct. I have also been told and I
understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.

Subscribed and sworn before me
this_____day of_____, 19___

Title:_____

Affirmed under penalty of perjury
this _8_ day of _March_, 19 _83_

Signed by _Richard J Baker_

Page _1_ of _1_ page(s)

Witness: _Wayne L. Wittner_

Witness: _Barbara J Bourne_

5M - 3/82

**EXHIBIT F, PAGE 27**

EXHIBIT B,
Page 31

Voluntary Statement

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN, or VILLAGE OF~~ _Ithaca_
Date _3-8-83_    Time _1420_    Place _Fernow Hall_
I, _Richard J Baker_, am _29_ years of age, born on _12/4/53_,
my address is _134 Judd Falls Rd., Ithaca NY_
my occupation is _Graduate Student_, and degree of education is _grad. student_,
I have been duly warned by _Wayne L. Wittner_, who has identified
himself as _Cornell Patrol Officer._
~~that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement.~~ Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

RJB On 2/10/83, I was in my office working. On that day, I used my TI-55 calculator and a Sanyo casette tape deck I had borrowed. When I returned to my office on 2/13/83, both were missing. I reported the theft to Cornell Public Safety on 2/14/83. On 2/25/83, I again worked in my office. On 3/05/83, I returned to my office and found two books: Life of Birds, Welty and Biometry, Sokol+Rolf missing. I immediately reported these thefts to Public Safety. RJB
RJB At no time during this period had I given permission to anyone to borrow any of this material. RJB
RJB At ~2:20pm, Officers Bourne & Wittner brought in my tape player and calculator. I positively identified these as mine. RJB

I have read this statement consisting of _1_ page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this_____day of_____, 19____

Title:_____

Affirmed under penalty of perjury
this _8_ day of _March_, 19_83_

Signed by _Richard J Baker_

Page _1_ of _1_ page(s)

Witness: _Wayne L. Wittner_

Witness: _Barbara J Bourne_

5M - 3/82

**EXHIBIT F, PAGE 28**

Interview of Kevin G. Vanginderen by Lt. William Boice, Public Safety, recorded by Joelle Munson, Public Safety, took place in the Major Investigations Office at 1035 hours, March 8, 1983. Lt. Boice began by having Vanginderen read his previous brief statement, which Vanginderen approved as correct and signed. Lt. Boice then began the following line of questioning: (B - Boice; V-Vanginderen)

B - Please state the facts in your own words.

V - About two years ago, I had a lab job at Bradfield Hall, which gave me a key to the building and Room 411. I noticed while I was working there that there were a lot of students that had books from courses they were no longer taking. I took some of these books and sold them to Campus Store and Triangle Book Store for $10. I am only getting poorer as a college student. I have a job also but when I ran out of cash, I would go to the lab and take a few books. I would only get $15 or $20 for them at a time. I went to Bradfield a couple of times the last semester and a couple of times this year, only when I needed the cash. Last semester, they changed the lock to one of the labs. I noticed the tunnel to Fernow this semester and the door was unlocked as well as the rooms. It was the same as in Bradfield, with lots of books that people didn't need. I took a few of them. In one office, there was a calculator on a desk and cassette recorder; and in another room, there was a cassette deck. They were the only things besides books that I took.

B - What were the dates of your employment at Bradfield Hall?

V - Approximately October to December 1981 -- the first semester of my junior year.

B - You were employed on the fourth floor?

V - Yes, 411, I think.

B - When approximately did you find yourself in a position where you started stealing?

V - The next semester. I was amazed that no one asked for the key and I had noticed the books.

B - You did not commit any thefts in 1981?

V - No, only second semester.

B - Approximately when did you start?

V - It doesn't stick out.

B - I have one case here from June 1982 (CR82-856).

MASTER FILE
DO NOT REMOVE

V - All the books may not have been discovered for a long time. I was not here over the summer. All the books were scientific.

B - This case occurred in May. Do you remember names and titles -- Principles of Plant Breeding and Plant Pathology?

V - They were all plant or scientific books -- all from labs or science offices.

B - Case 82-868 -- 8 books in Bradfield Hall, Room 411?

V - Yes

**EXHIBIT F, PAGE 29**

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                    Page 2

B - List of books -- Breeding Field Crops, Soils and Soil Fertility, Mycogenetics, Statistics, Plant Pathology, Biochemstry, Toxins in Plant Disease, and Plant Breeding II.

V - Sounds it.

B - Case 82-1670 -- 411 Bradfield Hall -- three textbooks -- Property of Soil, Plant Structure and Function, and Plant Breeding -- November 1982?

V - Sounds it.

B - Case 82-1685 -- 411 Bradfield Hall -- November 1982 -- textbook -- Plant Mineral Nutrition?

V - If they're from 411 ... don't know exact titles.

B - Case 82-1682 -- three textbooks?

V - (Nodded yes)

B - Case 83-303 -- occurred February 10-12 -- Unlawful entry into Room 312C Fernow Hall in which a calculator, TI-55, and a Sanyo tape deck recorder were taken. Were you responsible for these?

V - Yes, they have them. (officers)

B - These are the two items that were recovered in your room?

V - (Nodded yes)  In the next room, there was another cassette deck.

B - Case 83-306 -- 207 Fernow Hall -- occurred February 11, 1983 -- two textbooks?

V - Yes

B - Case 83-311 -- February 2 and 3 -- Room 306 Fernow -- Textbook -- Aquatic Chemistry?

V - Not offhand; what room?

B - 306

V - I imagine.

B - Case 83-333 - 306 Fernow -- Approximately middle of February?

V - If the room is the same, they're probably just different discoveries of the same theft.

B - One textbook -- Biological Science?

V - (Nodded yes)

B - Case 83-421 -- March 3-5 -- 312F Fernow -- JCV stereo cassette player recorder taken on a Burglary where the subject climbed over a partition. Are you responsible for this?

V - Yes.  It was the last theft at 2 AM Saturday.

B - Case 83-422 - 312C Fernow -- March 4 and 5 -- Burglary -- theft of two textbooks -- Biometry and The Life of Birds.  Do you remember these two?

V - Sounds familiar.


MASTER FILE
DO NOT REMOVE

**EXHIBIT F, PAGE 30**

MASTER FILE
DO NOT REMOVE

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                    Page 3

B - They were the two you sold to Triangle Book Store.

V - (Nodded yes)

B - Case 83-426 -- 312B Fernow Hall -- March 5 -- Burglary -- four textbooks stolen --
Resource Economics; Applied Theory of Price; The Way of Chung Tzu; Leisure -- The
Basis of Culture.  Are you familiar with this case?

V - Sounds familiar.

B - Where are these books now?

V - I have two paperbacks still.  The others were sold to Campus Store and Triangle
Book Store, I believe.

B - Have you stolen from any other building besides Bradfield and Fernow?

V - I only stole from buildings that I had access to.  I'm not a nervy person.  I only
stole at night with a key.  I didn't break down doors.  The rooms were obviously
open and vulnerable.

B - Do you know anything about the theft of a dollar bill changer at the Multi-Cat?

V - No

B - Do you know anything about tampering with an element analyzer on the 8th floor of
Bradfield Hall?

V - Know nothing about it.

B - How about miscellaneous things like the theft of soda pop on the 8th floor of Bradfield
Hall?

V - I was never on the 8th floor.

B - Your residence is 603 Winston Court, Apartment 3.  No problems up there?

V - (Shook head no)  I only took books that I figured people didn't need.

B - Can you explain to me why?

V - I currently owe the university approximately $1,000, a fraternity $700, and living
expenses are high.  I foresee myself graduating in debt.  The job at Lynah's not
enough -- I could go hungry.  I have $5 in my pocket now from the last books I sold.
My bank account is empty.  I feel remorse and yet I would not have eaten otherwise.
A strange remorse -- I would not be at college.  Tuition is up -- financial aid is
down.  I'm a graduating senior -- though not in an honest fashion.

B - Are you involved in any other activities?

V - No

B - Is your roommate involved?

V - No.  Obviously, I took things that were there for the taking.  I didn't break in.
My friends are not like that.

**EXHIBIT F, PAGE 31**

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                     Page 4

B - How many times do you think you burglarized offices?

V - Bradfield -- three or four times -- maybe a little more.  Fernow -- three times.

B - Each time you entered Bradfield, did you use your key?

V - Yes

B - Was this after you were terminated from your job?

V - I was never officially terminated.  I had a lab job with a loose schedule -- I
came in when I wanted.  I didn't come in any more because I didn't get along
with my boss.  I figured that they would have taken my key back -- they never
asked for it.

B - You entered Fernow via the tunnel:

V - (Nodded yes) The unlocked door.

B - You entered offices by climbing over the doors?

V - No, open doors.  I only climbed over two doors.

B - Which cases were those?

V - The tape decks and the calculator.

MASTER FILE
DO NOT REMOVE

**EXHIBIT F, PAGE 32**

ENC # 7 83-A22

INTERROGATION; ADVICE OF RIGHTS

<u>YOUR RIGHTS</u>



PLACE _Burton Hall_

DATE _3/8/83_

TIME _0900_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

<u>WAIVER OF RIGHTS</u>

I have read this statement of my rights an I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _Kevin Vanguard_

Witness _Barbara J Bouma_

Witness _Wayne L Witto_

Time _0900_

**EXHIBIT F, PAGE 33**

CONSTITUTIONAL RIGHTS

CONSENT TO SEARCH

The right of the people to be secure in their papers, houses, persons and effects, against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. (Fourth Amendment to the Constitution of the United States.)

I, Kevin G. Vanginderen , having been informed of my Constitutional Rights not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize Wayne Wittner and Barbra Bourne , Officers of the Cornell University Safety Division to conduct a complete search of my residence located at 603 Winston Ct. Apts. Apt #5 . These officers are authorized by me to take from my residence any letters, papers, materials or other property which would be considered contraband.

This written permission is being given by me to the above named officers voluntarily and without threats or promises of any kind, to commence at 0950 on 3-8-83 and to conclude by 0952 on 3-8-83 .

MASTER FILE
DO NOT REMOVE

_____
Signature

_____
Witness

_____
Witness

**EXHIBIT F, PAGE 34**



NOTICE OF INTENT TO USE ADMISSIONS
SCHEDULE A
* * * * * * * * * * * * * * * * *
ORAL ADMISSIONS

Date: 3-8-83                    Time: 0900 hrs.

Place: Ba-ton Hall

Made To: Wayne L. Wittner

Substance of Admissions: "I went into the rooms and Took the books, ~~coat~~ sterðo, calculator, and tape deck. I am a poor student and sold the books to get money"


Date:                          Time:

Place:

Made To:

Substance of Admissions:




Date:                          Time:

Place:

Made To:

Substance of Admissions:

STRICT ATTORNEY
OMPKINS COUNTY
CA. NEW YORK 14850

**EXHIBIT F, PAGE 35**

EXHIBIT B,
Page 39

NOTICE OF INTENT TO USE ADMISSIONS
SCHEDULE B
* * * * * * * * * * * * * * * * * *
WRITTEN ADMISSIONS
(Including Preliminary Oral Admissions)

Date: 3/8/83                          Time: 09/0

Place: Barton Hall

Made To: Barbara J. Bourne

Copy attached as Exhibit encl. #4 CR 83·422


Date:                                 Time:

Place:

Made To:                        MASTER FILE

Copy attached as Exhibit _____ DO NOT REMOVE


Date:                                 Time:

Place:

Made To:

Copy attached as Exhibit _____


Date:                                 Time:

Place:

Made To:

Copy attached as Exhibit _____

STRICT ATTORNEY
TOMPKINS COUNTY
CA. NEW YORK 14850

**EXHIBIT F, PAGE 36**

STATE OF NEW YORK : COUNTY OF TOMPKINS

CITY COURT        : CITY OF ITHACA                              CR # 83-422

THE PEOPLE OF THE STATE OF NEW YORK

- vs -                                          **ACCUSATORY**
                                                **INSTRUMENT**
Kevin G. Vanginderen    DOB 10/23/61
_____
                        *Defendant*                 MAS ... LE
                                                    DO NOT REMOVE

### A C C U S A T I O N

BE IT KNOWN THAT, by this Accusatory Instrument,  Barbara Bourne _____,

as the Complainant herein, accuses  Kevin G. Vanginderen _____,

the above named Defendant, with having committed the offense of

_____ Burglary in the third Degree _____,

in violation of the Section  140.20 _____, Subdivision _____ of the ____ Penal ____ Law

of the State of New York,  xxViolationxxxxxxxxxxxxxxxxMisdemeanorxxx    a Class ____ D ____ Felony.

### F A C T S

On or about the  5th ____ day of  March 1983 _____; the said defendant did, in the City of Ithaca, County

of Tompkins, New York,

did knowingly enter or remain unlawfully in a building , to wit: defendant entered at approx.

2:00AM room 312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to committ

the crime of larceny therein by stealing books, with said office space belonging to Richard

J. Baker, with all action by defendant without authorization, are contrary to the provisions

of the Statute in case made and provided. _____

The above allegations of fact are made by the Complainant herein:

_____ upon direct knowledge

XXXXX  upon information and belief, with the sources of Complainant's information and the grounds for his

belief being  Investigation of case (Cornell) 83-422 and sworn confession of defendant _____

WHEREFORE, Complainant prays that a warrant be issued for the arrest of the said defendant.

_____

                                        _____
                                        Barbara Bourne
                                        *Complainant*

### N O T I C E
(Penal Law, Section 210.45)

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE
OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A
FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE
TO BE TRUE.

Affirmed under penalty of perjury this  8th ____          Sworn to before me this _____ _____day

day of  March _____, 19 83 .                     of _____, 19 _____

                              OR

_____
        Barbara Bourne
        *Complainant*                             Judge or Justice, Desk Officer or Superior, or
                                                  ther authorized person.

### EXHIBIT F, PAGE 37

Court

# EXHIBIT C

1
2
3
4
5

6            **UNITED STATES DISTRICT COURT**

7            **SOUTHERN DISTRICT OF CALIFORNIA**

8

9  KEVIN VANGINDEREN,                    CASE NO. 07cv2045 BTM(JMA)

10                          Plaintiff,   **ORDER GRANTING SPECIAL**
                                         **MOTION TO STRIKE**
11       v.

12  CORNELL UNIVERSITY,

13                          Defendant.

14

15       Defendant Cornell University ("Cornell") has brought a Special Motion to Strike

16  Plaintiff's Complaint pursuant to Cal. Civ. Proc. Code § 425.16.  For the reasons discussed

    below, Cornell's motion is **GRANTED**.
17

18                          **I.  FACTUAL BACKGROUND**

19
    **A.  Judicial Proceedings before the Ithaca City Court**
20
         On March 8, 1983, Plaintiff Kevin Vanginderen ("Plaintiff") was charged in Ithaca City
21
    Court with third degree burglary, a felony.  The Accusatory Instrument alleged:
22
             On or about the 5th day of March 1983, the said defendant did, in the City of
23           Ithaca, County of Tompkins, New York . . . did knowingly enter or remain
             unlawfully in a building, to wit: defendant entered at approx. 2:00 AM room
24           312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to
             committ [sic] the crime of larceny therein by stealing books, with said office
25           space belonging to Richard J. Baker, with all actios [sic] by defendant without
             authorization, are contrary to the provisions of the Statute in case made and
26           provided.

27  (Def.'s Request for Judicial Notice, Ex. A.)

28       On August 17, 1983, Plaintiff was charged with petit larceny, a misdemeanor, based

                                1
                          **EXHIBIT C,**                      07cv2045 BTM(JMA)
                          **Page 42**

1   on the same events.  (Id.)  This charge was filed "in satisfaction" of the prior charge of

2   burglary in the third degree.  (Id.) Plaintiff entered a plea of guilty to the petit larceny charge.

3   (Id.)

4          Cornell's counsel initially believed that the City Court's records of the criminal

5   proceedings against Plaintiff were sealed.  However, on October 15, 2007, Valerie Dorn,

6   Associate University Counsel at Cornell, received a telephone call from the City Court Clerk's

7   Office informing her that the records were not sealed and were available for pickup.  (Dorn

8   Decl. ¶ 5.)  Ms. Dorn obtained the records on October 16, 2007.  (Id.)

9

10   **B. <u>Judicial Proceedings Before the County Court of Tompkins</u>**

11          On October 15, 2007, the City Court Clerk informed Ms. Dorn that the County Court

12   of Tompkins County ("County Court") possessed sealed records relating to criminal charges

13   against Plaintiff.  (Dorn Decl. ¶ 6.)  Cornell's counsel applied to the County Court to unseal

14   the records of the criminal proceedings against Plaintiff.  In an order issued after Cornell filed

15   its moving papers in this case, the County Court concluded that Cornell had provided

16   sufficient grounds to grant the motion to unseal records of the County Court, the Tompkins

17   County District Attorney's Office, and the Cornell University Police.  (Supp. Request for

18   Judicial Notice, Ex. E.)  Cornell obtained the unsealed records, which are attached as Exhibit

19   F to the Supplemental Request for Judicial Notice.

20          These records show that Cornell police became interested in Plaintiff as a result of

21   their investigation of a theft of two books from Fernow Hall that took place between March

22   4 and March 5, 1983.  The stolen books were located at Triangle Books ("Triangle"), a local

23   bookstore which bought used books.  (Ex. F at 7.)  A log kept by Triangle showed that

24   someone with the initials "K.V." and the Student I.D. # 222416 sold the stolen books  to

25   Triangle on March 5, 1983.  (Id.)  This information led the Cornell police to Plaintiff.  (Id.)

26          Further investigation led Cornell police to believe that Plaintiff was also the perpetrator

27   of nine additional thefts in Fernow Hall and five unsolved thefts in Bradfield Hall.  (Ex. F at

28   23.)  A search of Plaintiff's bedroom resulted in the discovery of a TI 51 calculator, Sanyo

1   tape recorder, and a JVC stereo cassette player/recorder, all of which were stolen from

2   Fernow Hall.  (Ex. F at 17.)

3        Plaintiff was interviewed and admitted that he had a key to Bradfield Hall and that he

4   took books from Room 411 and sold them for cash.  (Ex. F at 29.)  He admitted to the five

5   unsolved thefts in Bradfield Hall.  (Ex. F at 29-30.)  Plaintiff explained that he discovered a

6   tunnel between Bradfield Hall to Fernow Hall and admitted that he took a calculator, cassette

7   deck, cassette recorder, and various books from Fernow Hall.  (Id.)  When asked about

8   specific books that were stolen from Fernow Hall, Plaintiff either conceded that he had taken

9   them, indicated that the books sounded "familiar," or that he "imagine[d]" he took them.  (Ex.

10  F at 30.)

11       On June 7, 1983, a Tompkins County Grand Jury returned an indictment charging

12  Plaintiff with two counts of burglary in the second degree.  (Ex. F at 69.)  On August 1, 1983,

13  the County Court granted Plaintiff's motion to dismiss the indictment as defective (for

14  mistakenly charging burglary in the second degree instead of the proper charge of burglary

15  in the third degree).  (Ex. F at 90, 92-93.)  The People were given permission to refile.  (Id.)

16  However, Plaintiff agreed to plead guilty to a misdemeanor in City Court upon the condition

17  that the People not refile felony charges in County Court and agree to recommend a penalty

18  no harsher than probation.  (Ex. F at 91.)

19       As indicated above, on August 17, 1983, Plaintiff was charged with petit larceny, a

20  misdemeanor, in City Court.  (Ex. A at 7.)  On August 22, 1983, Plaintiff entered a plea of

21  guilty to the petit larceny charge.  (Ex. A at 8.)  On March 5, 1985, the County Court issued

22  an order sealing official records regarding the second degree burglary charges in the County

23  Court proceedings.  (Ex. F at 95.)  The order was sent to the Cornell police and the District

24  Attorney.  (Ex. F. at 94.)  The records of the misdemeanor in City Court were not sealed.

25

26

27  C.  **Cornell Chronicle**

28       On March 17, 1983, the Cornell Chronicle, a weekly University publication, included

the following paragraph on page 6 (as part of the "Blotter Barton" column):

> Department of Public Safety officials have charged Kevin G. Vanginderen of
> 603 Winston Court Apartments with third degree burglary in connection with
> 10 incidents of petit larceny and five burglaries on campus over a period of a
> year.  Safety reported recovering some $474 worth of stolen goods from him.

(Def.'s Request for Judicial Notice, Ex. B.)

Paper copies of all issues of the <u>Cornell Chronicle</u> are maintained in the Cornell University Library ("CUL") and are accessible to library patrons who are physically present on campus.  (Kenney Decl. ¶ 4.)  The <u>Cornell Chronicle</u> has also been microfilmed and is available to anyone who has access to a library that participates in the interlibrary loan system.  (<u>Id.</u>)  CUL has engaged in multiple long-term projects to digitize information resources in its collection.  (<u>Id.</u> at ¶ 3.)  Many of these digital materials are stored in CUL's institutional repository, known as eCommons.  (<u>Id.</u>)  The <u>Cornell Chronicle</u> is one of the resources that is being digitized.  (<u>Id.</u> at ¶ 4.)  Digitized copies of the <u>Cornell Chronicle</u> are accessible to anyone who has computer access to CUL's eCommons.  (<u>Id.</u>)

According to Plaintiff, until September 2, 2007, he had not been aware of the March 17, 1983 <u>Cornell Chronicle</u> article about himself.  (Vanginderen Decl. ¶ 8.)  He first learned about the article when he ran a "Google" search on himself and the "Google" results included an excerpt from and a link to the digitized version of the article.  (<u>Id.</u> at ¶ 9.)  Plaintiff requested that Cornell remove the references to himself from the digitized version of the March 17, 1983 <u>Cornell Chronicle</u>.  Cornell refused Plaintiff's request.

**D.  Plaintiff's Complaint**

On October 1, 2007, Plaintiff filed his Complaint in state court.  Plaintiff asserted claims of libel and public disclosure of private facts.  On October 29, 2007, Cornell removed the action to this Court.

**II.  LAW GOVERNING ANTI-SLAPP MOTIONS**

California Code of Civil Procedure § 425.16, California's anti-SLAPP (anti-Strategic Lawsuit Against Public Participation) statute, was enacted "to allow early dismissal of

**EXHIBIT C,**
**Page 45**

1   meritless first amendment cases aimed at chilling expression through costly, time-consuming

2   litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). See also

3   Wilcox v. Superior Court of Los Angeles County, 27 Cal. App. 4th 809, 823 (9th Cir. 1994)

4   (explaining that section 425.16 was intended to provide a "fast and inexpensive unmasking

5   and dismissal of SLAPPs"). The anti-SLAPP statute provides:

6        A cause of action against a person arising from any act of that person in
         furtherance of the person's right of petition or free speech under the United
7        States or California Constitution in connection with a public issue shall be
         subject to a special motion to strike, unless the court determines that the
8        plaintiff has established that the plaintiff will prevail on the claim.

9   Cal. Civ. Proc. Code § 425.16(b)(1).

10      As used in the anti-SLAPP statute, the term "act in furtherance of a person's right of

11  petition or free speech under the United States or California Constitution in connection with

12  a public issue" includes the following:

13       (1) any written or oral statement or writing made before a legislative, executive,
         or judicial proceeding, or any other official proceeding authorized by law; (2)
14       any written or oral statement or writing made in connection with an issue under
         consideration or review by a legislative, executive, or judicial body, or any other
15       official proceeding authorized by law; (3) any written or oral statement or
         writing made in a place open to the public or a public forum in connection with
16       an issue of public interest; (4) or any other conduct in furtherance of the
         exercise of the constitutional right of petition or the constitutional right of free
17       speech in connection with a public issue or an issue of public interest.

18  Cal. Civ. Proc. Code § 425.16(e).

19      The defendant bringing the motion to strike bears the initial burden of showing that

20  the challenged causes of action arise from an act or acts in furtherance of the defendant's

21  right of petition or free speech. Zamos v. Stroud, 32 Cal. 4th 958, 965 (2004). Once that

22  burden is met, the burden shifts to the plaintiff to establish the probability that plaintiff will

23  prevail on the claim. Id. To satisfy this prong, the plaintiff "must demonstrate that the

24  complaint is both legally sufficient and supported by a sufficient prima facie showing of facts

25  to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Jarrow

26  Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 741 (2003) (citation omitted).

27      When determining whether the defendant has met his initial burden of demonstrating

28  that the challenged causes of action arise from protected conduct, courts necessarily look

1    to the allegations in the operative complaint.  Brill Media Co., LLC v. TCW Group, Inc., 132

2    Cal. App. 4th 324 (2005).  Courts may also examine affidavits in making this assessment.

3    Id.  In contrast, in determining the probability of the plaintiff prevailing on the claim, courts

4    look to the evidence that will be presented at trial and require that the evidence be

5    admissible.  Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 654 (1996).  The

6    applicable standard for determining whether the plaintiff has met his burden is the same as

7    for a motion for summary judgment.  Colt v. Freedom Communications, Inc., 109 Cal. App.

8    4th 1551, 1557 (2003).

9

10                                   **III.  DISCUSSION**

11

12   **A.  Applicability of anti-SLAPP Statute**

13          The first question that must be addressed is whether Plaintiff's claims fall within the

14   scope of the anti-SLAPP statute.  For the reasons discussed below, the Court finds that

15   Plaintiff's claims are subject to a special motion to strike.

16          As mentioned above, the anti-SLAPP statute covers any "act in furtherance of a

17   person's right of petition or free speech under the United States or California Constitution in

18   connection with a public issue," including any "conduct in furtherance of the exercise of the

19   constitutional right of petition or the constitutional right of free speech in connection with a

20   public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(b), (e)(4).  A

21   statement or conduct is "in connection with a public issue or an issue of public interest" if "the

22   statement or conduct concerns a topic of widespread public interest and contributes in some

23   manner to a public discussion of the topic."  Hall v. Time Warner, Inc., 153 Cal. App. 4th

24   1337, 1347 (2007).  The "public interest" requirement must be "construed broadly," to

25   encourage continued participation in matters of public significance.  Cal. Civ. Proc. Code §

26   425.16(a).  See also Gilbert v. Sykes, 147 Cal. App. 4th 13, 23 (2007).

27          Here, the article in the Cornell Chronicle, in both its original and digitized versions,

28   concerns an issue of public interest – reporting of a criminal charge that was and is part of

the Ithaca City Court's public records. Although Plaintiff contends that the records of the criminal proceedings in City Court were sealed, the evidence submitted by Cornell indicates otherwise. Specifically, the County Court's order regarding the sealing of records was not sent to the City Court, the City Court Clerk informed counsel for Cornell that its records were not sealed, and Cornell was able to obtain the records, which were then submitted to the Court in connection with the motion.[1]

Case law establishes that the truthful reporting of information in a public record is protected by the First Amendment. In <u>Cox Broadcasting Corp. v. Cohn</u>, 420 U.S. 469 (1975), the Supreme Court explained:

> By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. *Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media.* The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that *the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.*

<u>Id.</u> at 495. Thus, the truthful reporting of information in public official records regarding criminal proceedings against an individual are protected by the First Amendment regardless of whether the reporting is concurrent with the criminal proceedings or years later. <u>Gates v. Discovery Communications, Inc.</u>, 34 Cal. 4th 679, 693 (2004) ("[T]he high court has never suggested, in <u>Cox</u> or in any subsequent case, that the fact the public record of a criminal proceeding may have come into existence years previously affects the absolute right of the press to report its contents.")

The <u>Cornell Chronicle</u> article reported information regarding the charge of third-degree

---

[1] Plaintiff objects to the Court's consideration of the City Court records, County Court records, and records of the Cornell Police and County District Attorney. Plaintiff contends that the records are not properly authenticated. Plaintiff's objection is overruled. Cornell has submitted declarations that the records submitted to the Court are the true and correct copies of the records obtained from the City Court and the records that were unsealed pursuant to the County Court's November 16, 2007 order. (Dorn Decl. ¶ 5; Roth Decl. ¶ 6.) Cornell has made a sufficient showing that the documents are what Cornell claims them to be, and the Court takes judicial notice of them pursuant to Fed. R. Civ. P. 201.

1  burglary brought in the County Court.  The County Court's records were not then sealed and

2  were public.  Although the article also reported facts that were not part of the court's records

3  – i.e., information regarding the seizure of items from Plaintiff's home and Plaintiff's

4  suspected involvement in a total of ten petit larcenies and five burglaries – these facts relate

5  to the circumstances of the charge and, therefore, also concern a matter of public interest.

6        Accordingly, Plaintiff's Complaint is subject to a special motion to strike under the anti-

7  SLAPP statute.

8

9  **B.  Probability of Prevailing on the Merits**

10       Because Cornell has met its initial burden of demonstrating that the challenged

11  causes of action arise from protected conduct, the burden shifts to Plaintiff to establish the

12  probability that he will prevail on his claims.  The Court concludes that Plaintiff has failed to

13  satisfy his burden.

14       Truth is an absolute defense to any libel action.  Campanelli v. The Regents of the

15  University of California, 44 Cal. App. 4th 572, 581-82 (1996).  However, in order to qualify

16  for the defense, "the defendant need not prove the literal truth of the allegedly libelous

17  accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of

18  the remark."  Id. (quoting Emde v. San Joaquin County Central Labor Council, 23 Cal. 2d

19  146, 160 (1943)).  Libel law "overlooks minor inaccuracies and concentrates on the

20  substantial truth."  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991).[2]

21       Here, the Cornell Chronicle article was substantially true.  The challenged language

22  of the article is as follows:

23       Department of Public Safety officials have charged Kevin G. Vanginderen of
         603 Winston Court Apartments with third degree burglary in connection with
24       10 incidents of petit larceny and five burglaries on campus over a period of a
         year.

25

26  ────────────────

27       [2]  There is no need to engage in a choice-of-law analysis because New York law
     governing libel is substantially the same as California law.  See Matovcik v. Times Beacon
28  Record Newspapers, 849 N.Y.S.2d 75, 78 (2007) (explaining that even if a publication is not
     literally true in all respects, the defense of truth applies as long as the publication is
     "substantially true.").

1   Plaintiff was charged with third-degree burglary, and the charge arose out of an investigation

2   that linked Plaintiff with a total of ten incidents of petit larceny and five burglaries on campus.

3   Thus, the charge had a connection to the ten incidents of petit larceny and five burglaries.

4   The use of the vague phrase "in connection with" was somewhat confusing and may have

5   led some readers to believe that Plaintiff was charged with all fifteen incidents. However, the

6   article did not state that Plaintiff was charged with all of the crimes. Although the article may

7   have been poorly written, the "gist" or sting" of the article was true. Therefore, Plaintiff

8   cannot prevail on his libel claim.

9       Plaintiff also fails to establish the probability that he will prevail on his claim for public

10  disclosure of private facts. Under California law, the elements of the tort of public disclosure

11  of private facts are (1) public disclosure (2) of a private fact (3) which would be offensive and

12  objectionable to the reasonable person and (4) which is not of legitimate public concern.

13  Taus v. Loftus, 40 Cal. 4th 683, 801 (2007).[3]  With respect to the fourth element, "lack of

14  newsworthiness is an element of the 'private facts' tort, making newsworthiness a complete

15  bar to common law liability." As discussed in Section III.A., supra, the article reported on a

16  matter of public interest. Therefore, Plaintiff's claim for public disclosure of private facts fails

17  on the merits.

18      In conclusion, Cornell's special motion to strike is granted in its entirety. Cornell's

19  evidentiary objections are denied as moot because the Court's conclusions would be the

20  same whether  the objections were overruled or sustained. The Court does not reach the

21  issue of whether Cornell republished the article when Cornell digitized it and made it

22  accessible on the internet.  As the prevailing party on the motion to strike, Cornell is entitled

23  to reasonable attorney's fees and costs. Cal. Civ. Proc. Code § 425.16(c). The amount of

24  the attorney's fees shall be determined upon motion by Cornell. Costs may be sought in the

25  manner provided by Civ.L.R. 54.1 after the entry of judgment.

26

27  _____

28      [3] New York law does not recognize a common-law right of privacy. See Messenger ex rel. Messenger v. Gruner & Jahr Printing and Pub., 94 N.Y.2d 436, 441 (2000).

9

EXHIBIT C,
Page 50

07cv2045 BTM(JMA)

1

**IV.  CONCLUSION**

2         For the reasons discussed above, Cornell's Special Motion to Strike is **GRANTED**.

3   The Complaint is **DISMISSED WITH PREJUDICE**.   The Clerk shall enter judgment

4   accordingly.   Any motion for attorney's fees must be brought within 30 days of this order.

5   **IT IS SO ORDERED.**

6

DATED:  June 3, 2008

7

8                                                 Honorable Barry Ted Moskowitz
                                                  United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C,**
**Page 51**

07cv2045 BTM(JMA)