















KAJ   3/17/03   13:53

3:03-CR-00699   USA V. GOSSMAN

*7*

*CRMEMSUP.*

1  J. Michael Roake (#77913)
   Ste. 238
2  4019 Goldfinch St.
   San Diego, California 92103
3  (619) 299-8132

4  Attorneys for Defendant
   STEPHEN GOSSMAN
5

FILED

MAR 17 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6              UNITED STATES DISTRICT COURT

7            SOUTHERN DISTRICT OF CALIFORNIA

8               (HON. NAPOLEON JONES, JR.)

9  UNITED STATES OF AMERICA,    ) Case No.: 03CR0699J
                                )
10              Plaintiff,       ) MEMORANDUM OF POINTS AND
                                ) AUTHORITIES IN SUPPORT OF
11       vs.                     ) MOTIONS:
                                ) 1) FOR ATTORNEY-CONDUCTED VOIR
12  STEPHEN GOSSMAN              )    DIRE;
                Defendant        ) 2) FOR USE OF A JURY
13                               )    QUESTIONNAIRE;
                                ) 3) TO COMPEL FURTHER DISCOVERY;
14                               ) 4) FOR NOTICE OF INTENT TO USE
                                )    FED. R. EVID. 404(B)
15                               )    EVIDENCE;
                                ) 5) FOR AN ADDITIONAL MOTION
16                               )    HEARING DATE
                                )
17  _____)

18      STEPHEN GOSSMAN, by and through his attorneys respectfully

19  submits the following Memorandum of Points and Authorities in

20  support of his pretrial motions.

21                              I.

22                         INTRODUCTION

23      On March 7, 2003, the Grand Jury returned an indictment

24  against Stephen Gossman, a career law enforcement officer, most

25  recently the San Diego Supervisor of the California Bureau of

26  Investigations, and DEA Airport Team Supervisor at the San Diego

27  Airport.  Mr. GOSSMAN is alleged to have violated 18 U.S.C. §1347

28  (Healthcare Fraud) as well as 18 U.S.C. §1956, Money Laundering.

                              - 1
                          03CR0699J

Essentially, Mr. Gossman is alleged to have somehow benefited when his Grandmother alienated her funds to qualify for Medi-Cal in the mid-90s. Medi-Cal funded grandmother Rose Dryshpel's nursing home care for his in the amount of @$40,000. By her failure to disclose or his assisting in not disclosing his grandmother's assets to Medi-Cal in 1994 and annually thereafter till her death in 1998, he is alleged to have erred. No monies from Medi-Cal or any other program came to him; disbursements were made to the nursing home for her care till her death.

The money laundering charge (§1956) flows from the health care fraud allegation. The government maintains he received and deposited the proceeds of unlawful (health care fraud) activity. He did neither. Medi-Cal reimbursement checks went directly to the nursing home on behalf of Ms. Drysphel. [1]

Regardless, California annually queried her eligibility and Mr. Gossman answered for her. At some point, he marked form boxes indicating she retained eligibility in terms of **her** limited resources. Consequently, Medi-Cal (not Medi-Care.[2]) paid the nursing home directly. Gossman neither received nor deposited any proceeds from the State as the monies expended for Grandmother were paid directly to the nursing homes.

In 1998, after her death, Gossman went to Medi-Cal and offered to compensate for any misunderstandings regarding payments from Medi-Cal to the nursing homes. It is routine for

---

[1] It appears that she is the one who originated the Medi-Cal claim years before 1994, unbeknownst to her grandson, arguably to preserve her assets for her heirs rather than nursing home directors.

[2] At the time, it is unclear whether it was wrongful to alienate property to qualify for Medi-Cal. This is a recent development. If not, then any

Medi-Cal to recoup such overpayments administratively. The offer was accepted and negotiations begun. However, IRS Special Agent Schick intervened and forbade Medi-Cal from settling the regulatory misunderstanding, as it ordinarily would have. The normal process of compromise was halted by the Federal Government in favor of its criminal investigation.

In 2000, Gossman resigned under threat of termination over this same Medi-Cal issue. He resigned to preserve his retirement and is contesting the ``termination''.

The government alleges Gossman apparently laundered the proceeds of health care fraud. Mr. Gossman shows an innocent source of the disputed funds that form the basis of the money laundering count. He rejects Medi-Cal fraud since any statement he made on behalf of his aged Grandmother that resulted in her receiving Medi-Cal coverage was not a **material** misstatement. Moreover, any efforts he undertook to remedy any administrative irregularities were baffled by a government agent, Agent Schick. Defendant is set for trial at the pleasure of this court and is currently released on bond.

This is a simple dispute. Did he get his money from his immigrant gambler grandmother who hoarded her winnings to bequeath to him, or did he somehow amass it by defrauding Medi-Cal on an obligation he did not owe, with money he did not receive from the fraud, by deposits unrelated to any fraud?

II.

---

statement Gossman signed would not be a material misstatement as she may have placed the property in his stewardship.

# DISCUSSION

## A. The Court Should Allow Attorney Voir Dire

Fed. R. Crim. P. 24(a) provides this Court the discretion to permit counsel for Mr. GOSSMAN to conduct *voir dire*. The participation of counsel in *voir dire* has become the rule rather the exception since federal courts have begun to recognize that "*voir dire* may have little meaning if it is not conducted at least in part by counsel." <u>United States v. Ible,</u> 630 F.2d 389, 395 (5th Cir. 1980). As the <u>Ible</u> court noted:

> The "federal" practice of almost exclusive *voir dire* examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case .... Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need than an exclusive examination in general terms by the trial court.

<u>Id</u>. The court in <u>Ible</u> encouraged trial courts to explain basic points of law and procedures and then turn *voir dire* questioning over to counsel.

By permitting counsel to conduct *voir dire*, especially in a case involving such ``hot button'' topics as ``bad cops'' and elder care, the trial court ensures that the questioning is sufficient to ferret out any impartiality. As the Ninth Circuit has noted:

> The trial judge (may) insist on conducting a *voir dire* examination, but if he does so, he must exercise a

sound judicial discretion in the acceptance or
rejection of supplemental questions proposed by
counsel. Discretion is not properly exercised if the
questions are not reasonably sufficient to test the
jury for bias or partiality.

United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979)
(reversal based on insufficient *voir dire*).

In addition, the court's unique position in the eyes of the
jurors ensures that *voir dire* conducted solely by the court
frequently may be insufficient. As the United States Supreme
Court recognized long ago: "The influence of the trial judge on
the jury is necessarily and properly of great weight and his [or
her] slightest word or intimation is received with deference, and
may prove controlling." Quercia v. United States, 289 U.S. 466,
470 (1933). Thus, "[n]atural human pride would suggest a negative
answer to whether there was a reason the juror could not be fair
and impartial." United States v. Dellinger, 742 F.2d. 340, 367-
370 (7th Cir. 1972). Due to the inherent likelihood that the
jurors will react differently to questions from the bench,
"[j]ustice requires that each lawyer be given an opportunity to
ferret out possible bias and prejudice of which the juror himself
may be unaware until certain facts are revealed." United States
v. Ledee, 549 F.2d 990, 993 (5th Cir.), cert. denied, 434 U.S.
902 (1977).

In the present case, Mr. GOSSMAN's attorneys should be
allowed to conduct *voir dire* in order to ensure the selection of
an unbiased jury. The concerns expressed in the above cases are
plainly applicable to a case involving law enforcement officials

charged with being ``bad cops'', and which involve health care
fraud, especially given the number of San Diego seniors in the
jury pool.  The public's attitude toward law enforcement and
health care regulators/administrators, as well as their knowledge
of interagency rivalries and systemic corruption within the DEA
touching on Mr. Gossman's accusers is critical.  The war on
drugs, of which Mr. Gossman was a pivotal part and his resistance
to DEA corruption with resultant retaliation and ``set up'' is an
issue at the center of fervent public debate for many years, and
increasingly heightened scrutiny more recently.

There may be an issue raising the question of police perjury
and entrapment on the part of Special Agent Allen Schick, and
counsel for Mr. GOSSMAN should be allowed to probe the jurors'
feelings regarding this, among others, to ensure there is no
resulting bias against Mr. GOSSMAN.  In terms of health fraud,
the jurors should be queried as to their familiarity with
regulations regarding care for seniors under Medi-Cal as well as
their familiarity with administrative paperwork in this arena.

**B.    The Court Should Allow The Use Of A Jury Questionnaire**

Mr. GOSSMAN respectfully requests the opportunity to submit
a jury questionnaire to prospective jurors in the instant case.
The questions would solicit some biographical information and
other pertinent questions to reveal the prejudices and biases of
potential jurors.

Appropriate *voir dire* questions must test the jury for bias
or partiality. The Ninth Circuits has more than once reversed a
trial court for conducting an insufficient *voir dire*. E.g.,
United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir. 1979);

United States v. Washington, 819 F.2d 221 (9th Cir. 1987). A jury questionnaire would contain questions intended to reveal any bias or prejudice. This Circuit and others have held many of these very questions mandatory. See e.g., Darbid v. Nourse, 664 F.2d 1109 (9th Cir. 1981) (questions regarding the credibility of law enforcement officers are required); United States v. Poole, 450 F.2d 1082 (3rd Cir. 1971) (error not to ask jurors whether they had ever been crime victims); United States v. Jefferson, 569 F.2d 260 (5th Cir. 1978) (trial court must inquire regarding previous jury service); United States v. Hill, 738 F.2d 152 (6th Cir. 1984) (must question prospective jurors regarding their understanding of presumption of innocence and requirement of proof beyond a reasonable doubt).

A jury questionnaire would contain questions regarding a juror's prior knowledge of the instant case and the inter-agency rivalries involved in the ``war on drugs''. The need for extensive questioning in the area of pre-trial publicity is well recognized. See Silverthorn v. United States, 400 F.2d 627 (9th Cir. 1968), cert. denied, 400 U.S. 1022 (1971). Questions regarding a juror's reading habits are intended to elicit information that might point to exposure to prejudicial pre-trial publicity, which the juror might not otherwise recall until the case is well under way.

Submission of questions in the form of a questionnaire will save court time and resources, as it will be unnecessary for the Court to repeat each question to each juror. Furthermore, use of a questionnaire ensures that jurors are asked identical questions in the same fashion. Questions probing prospective jurors' prior

knowledge of the case and exposure to the bureaucratic labyrinth of Medi-Cal are absolutely critical and, by using a questionnaire, the Court will preclude the possibility of a juror reciting all the information that he/she learned through pretrial publicity and thereby contaminating the entire panel. Lastly, because answers to jury questionnaires are given in written format, the jurors are likely to be more candid than they might be when answering *voir dire* questions.

For the foregoing reasons, it is respectfully requested that this Court allow defense counsel to submit a jury questionnaire to prospective jurors.

## C. Mr. GOSSMAN Moves to Compel Further Discovery

Mr. GOSSMAN has received some discovery in this case, but believes that other discovery, is outstanding, and, for that reason, moves for the production of the following items.

This request is not limited to those items the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care or knowledge of any "closely related investigative [or other] agencies". *United States v. Bryan*, 868 F.2d 1032, 1040 (9th Cir. 1989).

The *Brady* doctrine requires the government to disclose evidence in its possession that is either favorable to the defendant or material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* thus requires the government to produce evidence that tends to prove the defendant's innocence. *See United States v. BagIcy*, 473 U.S. 667, 676 (1985). *Brady* also applies to evidence that may impeach the credibility of a prosecution witness. *See Giglio v. United States*, 405 U.S. 150,

154 (1972). Where the defense makes a specific request for particularly described evidence, the prosecution may have a greater duty to produce it than if only a general request for material evidence. *See United States v. Agurs*, 427 U.S. 97, 106 (1976).

Mr. GOSSMAN requests the following information be provided, all of which is discoverable under *Brady* or the Federal Rules of Criminal Procedure:

REQUEST NO. 1

All documents and tangible objects, including, but not limited to, videotapes, recordings, transcripts, reports, or notes, relating or referring to, or constituting, containing, or reflecting:

(a) any statement by defendant, written, recorded, or oral, whenever and to whomever made; and,

(b) any statement by any defendant, any alleged co-conspirator or any other person, written, recorded, or oral, whenever and to whomever made, which the government intends to offer in evidence in the trial of this case, or which the government considers may constitute a statement in furtherance of any alleged conspiracy or ``scheme''. Such statement should include any statements or testimony of friend David Abrams.

REQUEST NO. 2

With regard to all conversations or statements within the scope of Request No. 1, please state (a) the name and address of the person to whom such statement was made; (b) the name of the person making the statement; (c) the date on which the statement was made; (d) the location where the statement was made.

REQUEST NO. 3

The substance of any oral statement, which the government intends to offer in evidence at the trial, made by defendant whether before or after arrest, in response to interrogation by any person then known to the defendant to be a government agent, to include California DOJ or Cal. Health Services Officials.

REQUEST NO. 4

All books, papers, documents, photographs, tangible objects, or copies or portions thereof, obtained from defendant Stephen Gossman, his friends, relatives, co-workers, or belong to him.

REQUEST NO. 5

All results or reports of investigations which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the issue of guilt or innocence or are intended for use by the government as evidence in chief at the trial. These include the investigative summaries of Cal. DOJ Special Agent Supervisor Karen Jackson and California Dept. of Health Services Kaylyn Grayson.

REQUEST NO. 6

(a) All memoranda and other documents received by the United States Attorney for the Southern District of California or members of this staff, relating to this investigation and delivered by the Department of Justice, or any other member of the executive branch during this investigation, to include the Cal. DOJ and Health Services;

(b)   All memoranda and other documents written by the United
States Attorney for the Southern District of California or
members of his staff, relating to this investigation  and
delivered to the Department of Justice, or any other member of
the executive branch, during this investigation, to include the
the California DOJ Professional Standards Group;

REQUEST NO. 7

The names and addresses of all person interviewed by any
government attorneys, government agents, officials, employees, or
informants, or by any **state or local** agency, in connection with
this case, whether or not such interview was reduced to an
interview report, whether the interview occurred before or after
the indictment, and whether or not such persons are intended to
be called as government witnesses.  This request includes, but is
not limited to, persons who can either give favorable information
regarding the defendant, or who can testify to inconsistent
statements made by government witnesses regarding the
investigation in this case, or who can testify adversely to other
governmental positions.

REQUEST NO. 8

Identify each government agent, official, employee, or
informant who personally witnessed any meeting or listened to any
telephone calls between defendant Stephen Gossman with any
government agent, official, employee, or informant during this
investigation.

REQUEST NO. 9

All documents, tangible objects, and other information
relating or referring to, or constituting, containing, reflecting

or suggesting any bias or hostility of any witness for the government concerning this investigation, to include the personnel files of S.A. Alan Schick and U.S. Border Patrol Brian Willett.

REQUEST NO. 10

The conviction record of all persons the government intends to call as witnesses at the time of trial, which convictions were punishable by death or imprisonment in excess of one year under the law under which the conviction was obtained, or which involved dishonesty or false statements, regardless of the punishment, within the meaning of Federal Rules of Evidence, Rule 609(a).

REQUEST NO. 11

All documents, tangible objects, or other information relating to the testimony of witnesses whom the government will call at trial, which documents, tangible objects, or information reflect materials that in any way contradict or are inconsistent with the anticipated trial testimony of the witnesses.

REQUEST NO. 12

Identify the dates, times, and locations of all prior testimony regarding the events of this case by any person the government intends to call as a witness at the time of trial, to include transcripts of informal Professional Standards Inquiries, union grievance proceedings, disability hearings, etc.;

REQUEST NO. 13

With regard to all non-governmental witnesses, provide the date, time, and place of all prior testimony given in any federal

or state proceeding regarding this or any other case, and provide copies of transcripts of all such testimony.

REQUEST NO. 14

All documents, tangible objects, and other information relating or referring to, or constituting, containing, or reflecting any statement made by any official, agent, employee, or informant of the government to any person not employed by the government regarding this investigation.

REQUEST NO. 15

All documents, tangible objects, or other information, including memoranda, opinion, decisions, reports, correspondence, letters, interpretations, advice, guidance, guidelines, policy statements, standards, regulations, rules, procedures, directives, instructions, recommendations, and manuals, referring or relating to, or constituting, containing, or reflecting:

(a) The investigation or enforcement of those federal and/or California laws which defendant, any alleged co-defendant(s) and/or any material witnesses are accused of violating;

(b) Compliance by officials, agents, and employees of any governmental agency, with such memoranda, opinions, decisions, reports, correspondence, letters, interpretations, advice, guidance, guidelines, policy statements, standards, regulations, rules, procedures, directives, instructions, recommendations, and manuals;

(c) The recording of conversations or interception of wire or oral communications involving undercover agents or informants;

(d)   The conduct of investigations involving the use of videotapes or other aural or visual recordings, the interception of wire or oral communication, the use of any electronic, mechanical, or other device for the acquisition of the contents of any wire or oral communications, or the use of other forms of surveillance;

(e)   The inducement or entrapment of persons during the conduct of investigations, including but not limited to the duties or obligations of compliance with federal and state law of officials, agents, employees, and informants of any governmental agency and private citizens assisting any governmental agency during the conduct of investigations.

REQUEST NO. 16

(a)   All notes, transcriptions, or recordings, of any interview or any statement of any person made by a government attorney or by any other agent, official, employee, or informant of the government, or by any state of local agency in connection with the investigation of the present case or relating to the offenses charges, whether before or after the return of the indictment, and state whether such items were reduced to an interview report.

(b)   All statements, interviews, and reports of any person, written or oral, made to any government attorney or by any other agent, official, employee, or informant of the government, or by the any state or local agency, in connection with the investigation of the present case or relating to the offenses charge, whether before or after the return of the indictment.

REQUEST NO. 17

Identify each government agent, official, employee, or informant who personally witnessed any meeting or listened to any telephone calls between Defendant and any government agent, official, employee, or informant during this investigation.

REQUEST NO. 18

Identify the names and locations of all informants or other non-governmental persons supplying information to the government concerning defendant or any other co-``schemer''in this case, indicted or not.

REQUEST NO. 19

Any promises or representations made by, or with the knowledge of the government, to any person the government intends to call as a witness at the time of trial, including, but not limited to, promises of no prosecution, immunity, lesser sentence of leniency, promotion, suspension of administrative discipline.

REQUEST NO. 20

Copies of all documents containing allegations of fraud, deceit, perjury, or lack of candor concerning any person the government intends to call as a witness, to include provisions of investigations of S.A. Schick and U.S.B.P. Brian Willett.

REQUEST NO. 21

The conviction record of all persons the government intends to call as witnesses at the time of trial, which convictions were punishable by death or imprisonment in excess of one year under the law under which the conviction was obtained, or which involved dishonesty or false statements, regardless of the punishment, within the meaning of Federal Rules of Evidence, Rule 609(a).

REQUEST NO. 22

All documents, tangible objects, or other information relating to the testimony of witnesses whom the government will call at trial, which documents, tangible objects, or information reflect materials that in any way contradict or are inconsistent with the anticipated trial testimony of the witnesses.

REQUEST NO. 23

Identify the dates, times, and locations of all prior testimony regarding the events of this case by any person the government intends to call as a witness at the time of trial.

REQUEST NO. 24

With regard to all non-governmental witnesses, provide the date, time, and place of all prior testimony given in any federal or state proceeding regarding this or any other case, and provide copies of transcripts of all such testimony.

REQUEST NO. 25

Regarding any informant or informants in the case, provide all of the following;

(a)  All testimony given by the informant(s) to any federal grand jury, concerning this case, or any other case in which an indictment has been returned or denied by any federal grand jury;

(b)  A copy of the conviction record of the informant(s), including any prior convictions within the meaning of Federal Rules of Evidence Rule 609(a); all charges which were anticipated to be brought against the informant(s) at or about the time of their cooperation with federal authorities; and all offenses committed by the informant(s) of which they were suspected, and

which were known to any of the state of federal authorities
involved in the investigation of this case;

(c) Any promises or representations made to the
informant(s), including, but not limited to, promises of no
prosecution, immunity, lesser sentence, or leniency by the member
of any federal agency, any agency of the State of California or
any other State of the Union; and including all such promises
whether or not made to the informant or to some third party on
their behalf;

(d) Any threats or statements made to the informant(s) to
compel, encourage, or coerce his participation and testimony
including, but not limited to, any statements by any federal or
state authorities of their dissatisfaction with the informant in
this or any previous case in which he was a cooperating witness,
or a potential or actual defendant;

(e) A statement of all monies or promises or monies given
or made to the informant by representatives of the federal
government, or any state agency, as a result of, or as an
inducement for, his cooperation in this or any other case
including, but not limited to, his acting as an informant or in
an undercover capacity on behalf of the government;

(f) A list of cases and investigations in which the
informant(s) acted as a cooperating individual, either as an
informant(s), or in an undercover capacity, together with
location and identify of any criminal filing resulting from that
cooperation;

(g) Copies of all sworn testimony given by the informant(s)
in any forum whatsoever, including, but not limited to, any

appearances before federal grand juries, or in the United States
District Courts.

(h) Copies of all statements, whether sworn or unsworn,
made by the informant(s) and which are in the possession of the
government, including, but not limited to, any statements
containing admissions of illegal acts by the informant(s) for
which he was granted immunity, or for which he has not been
prosecuted;

(i) Copies of any documents, transcripts, motions, or other
materials, evidencing the informant's unreliability including any
claims of illegality, misstatement, or unreliability of
informants and/or un-indicted co-conspirators made by defendants
or attorneys in other cases or by any agents, or any law
enforcement agencies who have worked with informants and/or un-
indicted co-conspirators; or by an attorney representing the
government who has worked with the informant(s);

(j) Evidence of the informant's assets and net worth;

(k) Evidence of the informant's residence and location for
the last ten years including evidence of his employment, sources
of income, and income for that period;

(l) Copies or statements of any instructions provided to
the informant regarding his performance of duties as an
undercover agent or as informants, which statements were made to
him by federal law enforcement officer, any federal attorney, or
any agent of any state law enforcement agency;

(m) Copies of all logs of all meetings between the
informant(s) and any agent involved in the investigation of this
case;

(n)  Copies of logs of all meetings with the informant(s) and any agents, whether state or federal, involving investigation in any other cases in which the informant(s) and/or was a cooperating individual or informant;

(o)  A list of the identify and addresses all government employees or agents who met with the informant(s) with regard to the investigation of this matter, and of the dates and locations of such meetings, whether in person, or otherwise;

(p)  All documents, logs, or memoranda indicating any contact between the informant(s) and the defendant;

(q)  Copies of any written authorization from the Federal Probation Department to the informant(s) to act as an undercover operative in this case, or in any other criminal investigation;

(r)  A copy of any probation report prepared for the informant(s) with regard to his conviction in the United States District Court;

(s)  Copies of the personal telephone toll records of the informant(s) for each residence or location occupied by him or her during the periods covered by the indictment.

(t)  Copies of the informant's personal bank records maintained during the periods covered by the indictment until the present time.

(u)  Copies of all Internal Revenue Service, State of California, or any other state income tax records or returns of the informant(s) during the periods covered by the indictment until the present time.

(v)   The circumstances of and the results of any polygraph examination performed of the informant(s) which the government has knowledge of, has ordered, or to which it has consented;

(w)   Any informant(s) file maintained on informants and/or co-conspirators by the Federal Bureau of Investigation; Drug Enforcement Administration; or any other law enforcement agency.

REQUEST NO. 26

All documents, tangible objects, and other information relating or referring to, or constituting, containing, or reflecting any statement made by any official, agent, employee, or informant of the government to any person not employed by the government regarding this investigation, Defendant, or any other person involved in this investigation.

REQUEST NO. 27

All documents, tangible objects, or other information, including memoranda, opinion, decisions, reports, correspondence, letters, interpretations, advice, guidance, guidelines, policy statements, standards, regulations, rules, procedures, directives, instructions, recommendations, and manuals, referring or relating to, or constituting, containing, or reflecting:

(a)   The manual or guidelines of any federal and/or California agency referring or relating to any laws which defendant is accused of violating;

(b)   The investigation or enforcement of those federal laws which defendant is accused of violating;

(c)   All Medi-Cal eligibility coverage criteria extan in 1992-1998;

(d)  Any Medi-Cal regulations extant in 1994-1998 requiring next of kin to assume payment liability for elders;

REQUEST NO. 28

All documents, tangible objects, and other information, including, but not limited to, minutes, transcripts, notes, summaries, reports, memoranda, records, and recordings of the meetings, actions, and decisions of any review committee relating or referring to this investigation, including deposition transcripts in parallel civil cases;

REQUEST NO. 29

All authorizations to conduct the undercover operation in this case regarding any or all of the defendants, including all requests therefor and exhibits thereto, and all subsequent applications concerning the conduct of such undercover operation.

REQUEST NO. 30

(a)  All evidence, documents, tangible objects, and other information exculpatory of the defendants, or favorable to them or which could reasonably weaken or overcome testimony adverse to the defendants given by any person, which were submitted to the grand jury for its consideration prior to the return of the indictment in this case;

(b)  A list of the names of all witnesses appearing before the grand jury in connection with its investigation of the present case; and

(c)  The names of all persons designated or sworn as grand jury agents or to whom grand jury material has been disclosed pursuant to the provisions of Rule 6 of the Federal Rules of Criminal Procedure.

REQUEST NO. 31

Any and all documents regarding the offering of evidence pursuant to Federal Rule of Evidence 404(b).

REQUEST NO. 32

Any and all documents evidencing the government's intended use of any expert witness at trial along with any documentation relied upon by such expert, any drafted reports, prior testimony by the expert, and any other statements or testimony made by the expert in the past.

These requests are continuing in nature in accordance with Rule 16(c) of the Federal Rules of Criminal procedure.

Defendant requests the above materials be made available to use within two weeks after the hearing on this motion in order to allow adequate time for their review and to seek further discovery or to file such pretrial motions as may be appropriate.

REQUEST NO. 33

The complete personnel file of IRS Special Agent Alan Schick and U.S.B.P. Agent Brian Willett.

REQUEST NO. 34

All pre-indictment and post-indictment statements of Mr. GOSSMAN whether recorded or unrecorded, oral or written, signed or unsigned made to persons other than government agents, which are relevant to the crimes charged and either exculpatory or inculpatory, whom the government does not intend to call as witnesses in this case;

REQUEST NO. 35

All documents and other tangible objects which are material to the preparation of the defense, or are intended for "use" by

the government at the trial of this case in its case-in-chief or in rebuttal, or obtained from or belong to Mr. GOSSMAN;

REQUEST NO. 36

Notice of the government's intention to use any evidence (in its case-in-chief at trial) which defendants may be entitled to suppress under Rule 4(a), 12 or 41 of the Federal Rules of Criminal Procedure, the Fourth, Fifth, or Sixth Amendments to the United States Constitution, and 18 U.S.C. Sections 2510, 2515, 2518, and 3504;

REQUEST NO. 37

Copies of any and all search warrants (including affidavits in support thereof and inventories listing articles seized when executing said warrant) that resulted in the seizure of evidence or the fruits thereof, which the government intends to introduce into evidence in its case-in chief or in rebuttal.

REQUEST NO. 38

All notes of government agents that contain any information requested above.

**D. Mr. GOSSMAN Requests Notice of Fed. R. Evid. 404(b) Evidence**

Under Fed. R. Evid. Rule 404(b), the government must provide notice of its intent to introduce evidence of crimes, wrongs, or acts of a defendant different from those alleged in the indictment. The government is required to inform the defense of the general nature of any such evidence it intends to introduce at trial. Mr. GOSSMAN, therefore, requests the government provide the following:

1. A description of the general nature of any crimes,

wrongs, or acts by Mr. GOSSMAN not set forth in the indictment
that the government intends to introduce at trial.

2. All documents and other tangible objects that tend to
show crimes, wrongs, or acts by Mr. GOSSMAN not set forth in the
indictment that the government may seek to use under Fed. R.
Evid. 404(b).

3. The names and addresses of all witnesses the
government intends to or may utilize to show crimes, wrongs, or
acts by Mr. GOSSMAN not set forth in the indictment that the
government may seek to use under Fed. R. Evid. 404(b).

**F. An Additional Motion Hearing Date Is Necessary**

Mr. GOSSMAN's counsel recently received the case. A first
appearance is set for March 17, 2003. Mr. GOSSMAN has simply not
had sufficient time to review any discovery and prepare
substantive motions in this case. Mr. GOSSMAN, therefore,
requests this Court set an additional motion heating date so he
may have an opportunity to prepare and set forth the vigorous
defense to which he is constitutionally entitled.

**CONCLUSION**

Based on the foregoing reasons, Mr. GOSSMAN respectfully
requests this Court grant his pretrial motions.

Respectfully Submitted:

Dated: March 14, 2003          J. Michael Roake
                               Counsel for Mr. GOSSMAN