USDC SCAN INDEX SHEET










RYC   6/27/03   9:51
3:03-CR-01596   USA V. GARCIA-ROSAS
*9*
*CRMEMSUP.*

DANIEL CASILLAS, ESQ., SBN 110298
Attorney at Law
105 West "F" Street, Suite 203
San Diego, CA 92101-6036
Tel: (619) 237-3777
FAX: 238-9914

Attorney for Defendant
SAUL GARCIA-ROSAS

FILED

03 JUN 26 PM 3:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(HONORABLE M. JAMES LORENZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 03-1596-L |
| Plaintiff, | |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |
| SAUL GARCIA-ROSAS, | |
| Defendant. | |

I

**ANY STATEMENTS MADE BY MR. GARCIA-ROSAS SHOULD BE SUPPRESSED**

A. **The Government Must Demonstrate Compliance With *Miranda*.**

The discovery reports indicate that Mr. Garcia-Rosas was interrogated while in custody. Subsequently, Mr. Garcia-Rosas allegedly made incriminating statements.

1. ***Miranda* Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the defendant to make any showing other than that the statement was taken from the

1

defendant during custodial interrogation. Id. at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. at 477; see Orozco v. Texas, 394 U.S. 324, 327 (1969). In Stansbury v. California, the Supreme Court clarified its prior decisions by stating that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." 511 U.S. 318, 323 (1994). The Ninth Circuit has held that a suspect will be found to be in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970). In determining whether a person is in custody, a reviewing court must consider the language used to summon the defendant, the physical surroundings of the interrogation, and the extent to which the defendant is confronted with evidence of his guilt. See United States v. Estrada-Lucas, 651 F.2d 1261 (9th Cir. 1980).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. In United States v. Leasure, the Ninth Circuit held that "custody," for the purposes of Miranda warnings, usually begin at the point of secondary inspection in border cases. 122 F.3d 837, 840 (1997). Miranda warnings must advise the defendant of each of his or her "critical" rights. See United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990). Furthermore, if a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. See Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 477 (1981).

2. **The Government Must Demonstrate That Mr. Garcia-Rosas' Alleged Waiver Was Voluntary, Knowing, and Intelligent.**

For a defendant's inculpatory statements to be admitted into evidence, the defendant's "waiver of Miranda rights [during custodial interrogation] must be voluntary, knowing and intelligent." United States v. Binder, 769 F.2d 595, 599 (9th Cir. 1985) (citing Miranda 384 U.S. at 479); see also United States v. Vallejo, 237 F.3d 1008, 1014 (9th Cir. 2001); Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When interrogation continues in the absence of an attorney, and a

2

statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. See Miranda, 384 U.S. at 475. The Ninth Circuit has held, "[t]here is a presumption against waiver." Garibay, 143 F.3d 534, 536-37 (1998) (citing United States v. Bernard S., 795 F.2d 749, 752 (9th Cir. 1986)) (other internal citations omitted); see also United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (stating that the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. See Edwards, 451 U.S. at 482; Zerbst, 304 U.S. at 464; see also Garibay, 143 F.3d at 536; see also Bernard S., 795 F.2d at 751 (stating that "[a] valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the accused"). A determination of the voluntary nature of a waiver "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment." Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir. 1990).

A determination of whether a waiver is knowing and intelligent, on the other hand, requires a reviewing court to discern whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id.; see also United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000); Garibay, 143 F.3d at 436. This inquiry requires that a court determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. Derrick, 924 F.2d at 820. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Burbine, 475 U.S. at 521) (emphasis in original) (other internal citations omitted).

Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as result of the interrogation can be used against the defendant. See Miranda, 384 U.S. at 479.

//

3

B. **Mr. Garcia-Rosas' Statements Were Involuntary.**

Even when the procedural safeguards of <u>Miranda</u> have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded upon an involuntary confession. See <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence. See <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).

A voluntary statement must be the product of a rational intellect and free will. See <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960). In determining the voluntariness of a confession, the Ninth Circuit has required consideration of "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." <u>United States v. Bautista-Avila</u>, 6 F.3d 1360, 1364 (9th Cir. 1993); see also <u>Bustamonte</u>, 412 U.S. at 226. Factors a reviewing court should consider when determining voluntariness include the youth of the accused, lack of education, low intelligence, the absence of any advice regarding the accused's constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep, to determine if law enforcement officers elicited a voluntary confession. See <u>Bustamonte</u>, 412 U.S. at 226.

In general, a statement is considered involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976) (per curiam) (quoting <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)); see also <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981) (agent's express statement that defendant would not see her child "for a while" and warning that she had "a lot at stake", referring specifically to her child, were patently coercive and defendant's resultant confession held involuntary).

C. **This Court Should Conduct An Evidentiary Hearing.**

This Court must conduct an evidentiary hearing to determine whether Mr. Garcia-Rosas' statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Garcia-Rosas are

voluntary. In addition, 18 U.S.C. § 3501(b) requires this Court to consider various enumerated factors, including Mr. Garcia-Rosas' understanding of his rights and of the charges against him. Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, § 3501(a) requires this Court to make a factual determination. If a factual determination is required, courts must make factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

D. **Mr. Garcia-Rosas' Statements Must be Suppressed Because He Was Not Informed of His Right to Speak with Consulate Officials.**

The United States and Mexico are both parties to the Vienna Convention on Consular Relations ("the Treaty"). United Mexican States v. Woods, 126 F.3d 1220 (9th Cir. 1997). Article 36 of the Treaty provides:

> if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

Vienna Convention on Consular Relations at 15. Thus, the Treaty "requires an arresting government to notify a foreign national who has been arrested, imprisoned or taken into custody or detention of his right to contact his consul." Faulder v. Johnson, 81 F.3d 515, 520 (5th Cir.), cert. denied, 117 S. Ct. 487 (1996).

In this instance, the arresting officers did not inform Mr. Garcia-Rosas of his right under the Treaty to contact the Mexican consulate. Such a failure is a serious violation. See id. ("we in no way approve of Texas' failure to advise" the defendant of his rights under the Treaty); Republic of Paraguay v. Allen, 949 F. Supp. 1269, 1273 (E.D. Va. 1996) ("this Court is disenchanted by Virginia's failure to embrace and abide by the principles embodied in the" Treaty), aff'd, 134 F.3d

622 (1998). Indeed, the <u>federal</u> government's failure to abide by the Treaty in this instance is even more egregious than the states' failures in <u>Faulder</u> and <u>Allen</u>. To remedy this egregious violation, the Court should suppress Mr. Garcia-Rosas' post-arrest statements.

## II

## **THE INDICTMENT SHOULD BE DISMISSED DUE TO THE GOVERNMENT'S RELEASE OF EXCULPATORY MATERIAL WITNESSES**

The right to compel the attendance of witnesses, and to offer their testimony at trial, has long been recognized to be at the core of the right to present a defense. <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967). As Justice O'Connor stated in her concurring opinion in <u>United States v. Valenzuela-Bernal</u>, "In short, the right to compulsory process is essential to a fair trial." 458 U.S. 858, 875 (1982). The rights protected by the Compulsory Process Clause clearly include the right to present the defendant's version of the facts to the jury so that it may decide where the truth lies. A defendant is denied this crucial right insofar as the government makes witnesses unavailable to him.

In <u>Valenzuela-Bernal</u>, the Supreme Court held that the deportation or voluntary return of alien witnesses whose testimony would be both "material and favorable" to the defense constitutes a violation of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. <u>Id.</u> The Court stated that sanctions would be appropriate if the defendant "makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." <u>Id.</u> at 873.

The rationale of <u>Valenzuela-Bernal</u> is that the government, acting through its Executive Branch, should be allowed to make a good faith determination that a detained witness possesses no evidence favorable to the defense, and following that determination, take steps to return the witness to Mexico rather than hold him or her in custody pending trial. The required showing necessary for sanctions following the release of material witnesses reflects this rationale: the defense must make some showing that the evidence lost would be "material and favorable" to the defense. <u>Valenzuela-Bernal</u>, 458 U.S. at 872. It is not required that a detailed description of the nature of the lost evidence be provided, but only that a "plausible showing" be made that the evidence will be

material and favorable.

The Ninth Circuit has created a two-step analysis when deal with deported witnesses. See Untied States v. Velarde-Gavarrete, 975 F.2d 672 (9th Cir. 1993); United States v. Dring, 930 F.2d 687 (9th Cir. 1991), cert. denied, 506 U.S. 836 (1992); United States v. Armenta, 69 F.3d 304 (9th Cir. 1995). The defendant must show that the government acted in bad faith and that the evidence lost would be material and favorable to the defense. Id. Both factors are satisfied in this case.

The limited information provided to defense counsel indicates that not all the passengers in the vehicle implicated Mr. Garcia-Rosas as knowingly committing this crime. In response, the Government deported thirteen other witnesses who may or may not have implicated him. If Mr. Garcia-Rosas had truly read and understood the Lujan-Castro waiver, he would not have signed it. Furthermore, Mr. Garcia-Rosas did not waive his rights made clear in Lujan-Castro. The Ninth Circuit in United States v. Lujan-Castro, 602 F.2d 877 (9th Cir. 1979) stated that the defendant has the right to detain any witness not legally in the United States. He did not make a knowing, intelligent and voluntarily waiver. Mr. Garcia-Rosas was merely told to sign the waiver so that the individuals riding in the vehicle could be returned to their homes in Mexico.

This evidence/material witnesses would have exculpated Mr. Garcia-Rosas and so the Government should have temporarily detained the other witnesses for trial. Because these witnesses were released by the Government, Mr. Garcia-Rosas is deprived of testimony that is material, favorable, and not cumulative. The testimony of the deported witnesses is crucial to the analysis because there is "a reasonable likelihood that the testimony could have affected the trier of fact." Valenzuela-Bernal, 458 U.S. at 874. The indictment should therefore be dismissed.

## III

## COUNTS 1, 3, AND 5 OF THE INDICTMENT SHOULD BE DISMISSED
## BECAUSE THEY CHARGE AN UNCONSTITUTIONALLY VAGUE STATUTE

Title 8 U.S.C. §1324(a)(2)(B)(ii) as charged in Counts 1, 3 and 5 is unconstitutionally vague. In pertinent part, section 1324(a)(2)(B)(ii) punishes, for not less than three years imprisonment, "an offense done for the purpose of commercial advantage or private gain." 8 U.S.C. §1324(a)(2)(B)(ii) (emphasis added). The Ninth Circuit has not addressed whether the emphasized language passes

constitutional muster from a vagueness perspective; indeed, it appears that no court has commented on this specific language and that this is an issue of first impression. Nevertheless, the general principles of the void-for-vagueness make it clear that §1324(a)(2)(B)(ii) is constitutionally deficient.

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

Kolender v. Lawson, 461 U.S. 352, 357 (1983) (striking down California statute that required loiterers to provide "credible and reliable" identification to police officers). In Kolender, Justice O'Connor emphasized that the void-for-vagueness doctrine focuses on "'the requirement that a legislature establish minimal guidelines to govern law enforcement.'" Id. at 358 (citations omitted).

When "the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.'" Id. (citations omitted).

By vaguely stating, "an offense done for the purpose of commercial advantage or private financial gain," without clarifying whether (1) the person who transported the aliens need be the one gaining financially or whether (2) anyone anywhere who was to gain financially would be enough "for the purpose of commercial advantage or private financial gain," Congress has engaged in precisely the type of imprecise draftsmanship that Kolender proscribes. Rather than providing at least minimal guidelines as to the type of conduct that it sought to criminalize, Congress apparently decided to allow §1324(a)(2)(B)(ii) to be randomly enforced at the border.

Indeed, the myriad of §1324(a)(2)(B)(ii) cases that are presently brought in this district clearly demonstrate that the dispositions of these cases are often being dictated by the personal predilections of agents, prosecutors, and juries. For example, it is unclear how an unknowing driver of a van, who is earning no income from driving the van, can be guilty under the clause in question when the smuggler who organized and arranged the illegal bringing in or transportation is the only one gaining financially. Nevertheless, some agents believe that such conduct constitutes "an offense done for the purpose of commercial gain" because someone involved in the offense -- no matter how

8

attenuated -- gained financially, and therefore arrests are sometimes made and complaints are sometimes lodged. Some prosecutors indict these cases, while others do not. Sometimes these cases are allowed to reach the jury, while sometimes they are not, and then, of course, some juries may find that such conduct constitutes "an offense done" while others may not.

Put simply, the vague language in §1324(a)(2)(B)(ii), while perhaps leaving room for cleverly crafted prosecutions, subjects defendants such as Mr. Garcia-Rosas to arbitrary and discriminatory decisions as to how the law should be enforced. As a result, the statute fails to pass constitutional muster, and Counts 1, 3 and 5 must, therefore, be dismissed.

## IV

## THIS COURT SHOULD PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY AS TO COUNTS ONE, THREE AND FIVE (PECUNIARY GAIN COUNTS)

Mr. Garcia-Rosas moves this Court to preclude the Government from proceeding under an aiding-and-abetting theory as to Counts One, Three and Five (the pecuniary gain counts) for the following reasons.

### A. Aiding And Abetting Requires Proof Of An Additional Element, Beyond The Elements Of The Underlying Offense, And Thus, This Element Must Be Alleged In The Indictment.

The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V; see also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted) (stating that "[i]n this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'"). An indictment must allege every essential element of the offense, including implied elements not present in the statutory language. United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); see also United States v. Pernillo-Fuentes, 252 F.3d 1030, 1034 (9th Cir. 2001) (holding that specific intent must be alleged in indictment charging an attempted reentry by a deported alien); accord Russell v. United States, 369 U.S. 749, 763-64 (1962). "If an element is necessary to convict, it is also necessary to indict,

because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

The Ninth Circuit has held that "[o]ur circuit law is clear that *aiding and abetting contains an additional element of specific intent*, beyond the mental state required by the principal crime."[1] United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (emphasis added); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (expressly stating that "the elements necessary to convict an individual under an aiding and abetting theory are . . . that the accused had the specific intent to facilitate the commission of a crime by another"); United States v. Andrews, 75 F.3d 552, 555-57 (9th Cir. 1996) (reversing defendant's convictions for aiding and abetting murder and attempted voluntary manslaughter because there was insufficient evidence to show that the defendant "specifically intended" to facilitate the commission of the offense by someone else). Because a defendant is constitutionally entitled to a grand jury finding on every essential element necessary to convict her, this additional intent element must also be alleged in the indictment before the Government may proceed under an aiding and abetting theory.

B. **The Cases Holding that the "Aiding and Abetting" Theory Is Implied in Every Federal Indictment Are Not to the Contrary.**

It is true that the Ninth Circuit has stated in dictum that aiding and abetting is implied in

---

[1] Indeed, Sayetsitty described the "aiding and abetting" jurisprudence as being "paralleled by [the Ninth Circuit's ] cases dealing with attempts." Sayetsitty, 107 F.3d at 1412. As the Ninth Circuit explained:

> Attempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant's purpose to commit the underlying crime-an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.

Id. Even though the substantive offense required proof of only general intent, aiding and abetting required proof of specific intent. Thus, because the district court failed to provide an intoxication instruction for a defendant charged with aiding and abetting, the Ninth Circuit reversed the conviction Id. As Sayetsitty demonstrates, the Government's decision to proceed under an aiding and abetting theory may open the door to possible defenses unavailable to the principal. This need for notice further underscores why this element must be alleged in the indictment.

every indictment. See United States v. Armstrong, 909 F.2d 1238 (9th Cir. 1990); Gaskins, 849 F.2d at 1442; United States v. Michaels, 796 F.2d 1112, 1117-1118 (9th Cir. 1986). However, none of these cases examined the language used in the indictment; they only examined the jury instructions. They accordingly do not resolve the question presented here.

Because the aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for acts which one assists another in performing," Nye & Nissen v. United States, 336 U.S. 613, 620 (1949), the acts set forth in the statute merely describe the means of committing an offense. Armstrong, 909 F.2d at 1243; see also United States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987); Michaels, 796 F.2d at 1117-18. Put another way, Armstrong and its antecedents do not hold that an indictment may omit the additional intent element required for a conviction under the aiding and abetting theory; they simply recognize that 18 U.S.C. § 2 sets forth the acts of the defendant that expose her to liability as a principal. Because these cases do not discuss the additional intent element which is necessary to convict a defendant under the aiding and abetting theory, they are inapposite.[2]

## C. Neither The Prosecution Nor The Court May Broaden The Permissible Bases For Conviction Beyond Those Charged In The Indictment.

Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the Government to institute criminal prosecutions. United States v. Miller, 471 U.S. 130, 139 (1985). In accordance with these principles, the United States Supreme Court has observed that

> [i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Ex parte Bain, 121 U.S. 1, 10 (1962), overruled on other grounds by United States v. Cotton, 535

---

[2] If section 2 does not require all offense elements to be alleged in the indictment, then it is unconstitutional. Congress cannot exempt its statutes from the requirements of the Grand Jury Clause of the Fifth Amendment. Thus, if this Court holds that section 2 does not require all elements necessary to convict to be alleged in the indictment, then it must strike this statute down.

11

U.S. 625 (2002).[3] Accordingly, the Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. Stirone v. United States, 361 U.S. 212, 218 & n.3 (1960).

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); see also United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (recognizing that a court may not constructively amend the indictment through its instructions to the jury); United States v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where district court instructed jury on work practice standard not alleged in indictment); United States v. Leichtnam, 948 F.2d 370, 380-81 (7th Cir. 1991) (finding constructive amendment where indictment charged the defendant with using a specific firearm and where the evidence and the district court's instructions "broaden[ed] the possible bases for conviction to include knowingly using or carrying *any* firearm") (emphasis in original). Indeed, one court observed that

> [w]hat becomes essential to a charged offense in a particular case--that is, above and beyond what is necessary as a statutory matter--depends upon the structure of the indictment . . . and is thus completely within the government's control.

United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (internal citation omitted); United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990) (citations omitted) (finding constructive amendment and observing that "it must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged RICO conspiracy . . . . It is the prosecution which sets the parameters to which a RICO conspiracy trial must be confined; having set the stage, the government must be satisfied with the limits of its own creation."). A constructive amendment always requires reversal because it deprives a defendant of her right to be tried only on the grand jury's charge. Stirone, 361 U.S. at 217; United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (en banc).

---

[3] Cotton did not overrule the cited holding in Bain, nor parallel holdings in Russell or Stirone. Cotton, 535 U.S. at 631. Indeed, it expressly left this holding of Bain intact. Id. Nor did the Court decide whether an indictment error is a structural defect or whether such an error affects substantial rights. Id. at 631-33. Thus, it does not aid this Court's analysis.

12

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, then neither the Government nor this Court can broaden the indictment to include aiding and abetting as a possible basis for conviction.

### D. The Indictment Here Does Not Authorize The Prosecution To Proceed Under An Aiding And Abetting Theory.

Sayetsitty clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: The defendant must have specifically intended to aid the principal in the commission of the offense, and the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412. Aiding and abetting clearly requires proof of an *additional* intent element beyond the intent required by the statute. Id.

Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that the defendant intended to aid a principal in the commission of the offense, in addition to proving the intent elements attributed to the principal. These are distinct elements, and under Hill, DuBo, and Pernillo-Fuentes, all of these elements need to be alleged in the indictment. See Du Bo, 186 F.3d at 1179; Pernillo-Fuentes, 252 F.3d at 1032; Hill, 279 F.3d at 741. Because the indictment here failed to allege this additional intent element, this Court may not allow the Government to proceed under an aiding and abetting theory. A contrary holding would constructively amend the indictment and impermissibly broaden the scope of the charges.

### E. The Indictment's Mere Citation to 18 U.S.C. § 2, the Aiding-and-Abetting Statute, Does Not Render the Indictment Sufficient.

The Government may argue that even if the intent to aid and abet were required to be alleged in the indictment, the aiding-and-abetting statute was cited in the indictment here. It is true that the indictment cited -- without more -- 18 U.S.C. § 2. However, this does not render the indictment sufficient.

Mr. Garcia-Rosas's argument is not that the language, "aiding and abetting," or any of the language set forth in 18 U.S.C. § 2, must be alleged in the indictment; rather, he argues that the element recognized by the Ninth Circuit's case law -- that the defendant had the specific intent to aid

13

the principal in the commission of the offense -- must be alleged in the indictment.

Additionally, the Ninth Circuit's case law cannot be clearer: when the indictment is questioned prior to trial, "[a] correct citation to the statute is not sufficient to compensate for the exclusion [of an essential element]." United States v. Kurka, 818 F.2d 1427, 1431 (9th Cir. 1987) (citing Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986); United States v. Rojo, 727 F.2d 1415, 1418-19 (9th Cir. 1983)); accord United States v. James, 980 F.2d 1314, 1318 (9th Cir. 1992). In Kurka, the defendant moved to dismiss the indictment on the ground that it failed to allege that the damage to the property was willful. 818 F.2d at 1430. Even though the indictment cited the correct statute, the Ninth Circuit held that "[t]he failure to include the element of willfulness . . . render[ed] the indictment constitutionally defective," and accordingly reversed the defendant's conviction. Id. at 1430-31. Likewise, here, mere citation to 18 U.S.C. § 2 does not render the indictment sufficient.

In any event, 18 U.S.C. § 2 does not set forth any offense elements. See Armstrong, 909 F.2d at 1241. As a consequence, mere citation to this statute does not reflect that the Grand Jury considered, much less found, the essential element that the Defendant had the specific intent to aid the principal in the commission of the offense. Thus, citation to 18 U.S.C. § 2 does not cure the deficiency in the indictment.

Thus, this Court should preclude the Government from proceeding under an aiding and abetting theory as to Counts One, Three and Five.

## V

**BECAUSE THE GRAND JURY IS INSTRUCTED THAT (1) IT CANNOT CONSIDER THE WISDOM OF ANY LAW PASSED BY CONGRESS; (2) IT CANNOT CONSIDER PENALTY INFORMATION; AND (3) PROBABLE CAUSE HAS ALREADY BEEN DETERMINED BY A JUDGE AFTER A PRELIMINARY HEARING, MR. GARCIA-ROSAS WAS DENIED HIS FIFTH AMENDMENT RIGHT TO THE TRADITIONAL FUNCTIONING OF THE GRAND JURY**

A.  **Introduction.**

In United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam), the Ninth Circuit rejected a challenge to the instructions given to a grand jury in the Southern District. In Marcucci, the

Ninth Circuit held that grand jurors need not be told of their historical power to decline to indict even in the face of a showing of probable cause. Id. at 1163. Even though the majority misrepresented Marcucci's argument, id. at 1167 (Hawkins, J. dissenting), and, at any rate, is wrong on the merits, id. at 1166-73, Marcucci is binding on this Court,[4] and controls as to the equally erroneous instructions given to the instant grand jury. See, e.g., In Re: the Empanelment of Grand Jury Panels 02-1 and 02-2, July 25, 2002 at 10 ("Empanelment).[5] The following analysis, however, addresses only issues that remain open in the wake of Marcucci.

B.  **The District Court's Instructions Forbidding Grand Jurors From Considering the Wisdom of Any Law Passed By Congress And the Potential Penalties Contradict Both *Vasquez*'s Description of the Authority of the Grand Jury and *Williams*' Recognition That Courts Possess Little Supervisory Power Over the Grand Jury.**

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury... ." U.S. Const., Amend. V. See also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted) ("In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'"). The Supreme Court has characterized the grand jury "as a primary security to the innocent against a hasty, malicious and oppressive persecution; it serves the invaluable function in our society as standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded on reason or was dictated by an intimidating power or by malice and personal ill will." Wood v. Georgia, 370 U.S. 375, 390 (1962).

The Supreme Court has recognized "[t]he necessity to society of an independent and informed grand jury." Wood, 370 U.S. at 390; accord Stirone v. United States, 361 U.S. 212, 218 (1960) (emphasizing that independence of the grand jury is essential to the "very purpose" of the grand jury right). Indeed, "an infringement [of the grand jury's independence] may result in grave doubt as to a

---

[4] To forestall any later waiver claim, Mr. Garcia-Rosas requests that this Court disregard Marcucci's mistaken analysis.

[5] Counsel has not yet acquired a copy of the January 2003 charge, and cites to the July 2002 charge as illustrative of the continuing Fifth Amendment violations occurring post-Marcucci.

15

violation's effect on the grand jury's decision to indict." Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).

> Here, the grand jurors' independence was undercut when they were instructed that they cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is determined by Congress and not by you. Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction. Judges alone determine punishment.

Empanelment at 5.[6] No authority supports the notion that a district court judge may take affirmative steps to limit the subject matter a grand jury may consider. See generally United States v. Williams, 504 U.S. 36 (1992) (drastically limiting the supervisory powers of the courts over the grand jury).

Because the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same facts [,]" Vasquez v. Hillery, 474 U.S. 254, 263 (1986), it surely can consider punishment: how else is it to exercise the power that the Supreme Court has confirmed that it possesses? As Judge Hawkins observed, "[t]his instruction improperly limits the jurors' discretion regarding the proper scope of application of federal criminal law, as well as matters of sentencing." Marcucci, 299 F.3d at 1169 (Hawkins, J., dissenting); see also Gaither v. United States, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) ("Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh") (citation, internal quotation omitted). The grand jury's evaluation of the law at issue in a given case -- does the statute prohibit murder or distribution of medicinal marijuana to AIDS patients -- and the penalties -- is the offense a serious felony or a misdemeanor -- surely affects their assessment of "the *need* to indict." Vasquez, 474 U.S. at 264 (emphasis added).[7]

---

[6] While the Marcucci majority quoted this instruction in its opinion, it did not address its propriety. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent." Webster v. Fall, 266 U.S. 507, 512 (1925).

[7] See George D. Edwards, The Grand Jury 35-36 (1906) (describing the functioning of grand juries in rejecting cases in which there is probable cause but which the grand jury views as not serious enough to merit prosecution).

16

Justice Blackmun's dissent in <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978), provides an illustration of this point. He observed that "it is conceivable that *a properly instructed* Kentucky grand jury, in response [to the very severe penalties associated with a habitual offender statute], would have refused to subject petitioner to such an onerous penalty for his forgery charge" even though there was sufficient evidence. <u>Id.</u> at 368 n.2 (1978) (Blackmun, J., dissenting) (emphasis added). It is not "conceivable," however, under the instructions given the grand jurors who voted to indict Mr. Gonzalez Flores.

Nor is there any authority for Judge Miller's decision to circumscribe the subject matter of the grand jurors' inquiries. In fact, placing such limitations on the grand jurors "run[s] counter to the whole history of the grand jury institution, in which lay [persons] conduct their inquiries unfettered by technical rules." <u>Costello v. United States</u>, 350 U.S. 359, 364 (1956). In holding that courts could not order prosecutors to disclose exculpatory evidence to grand jurors, the Supreme Court observed that "as a general matter at least, no such 'supervisory' judicial authority exists." <u>Williams</u>, 504 U.S. at 47.

In light of "[t]he grand jury's functional independence from the Judicial Branch," <u>id.</u> at 48, and the federal courts' "limited" power "to fashion, on their own initiative, rules of grand jury procedure," <u>id.</u> at 50, the decision to instruct the grand jurors that they were forbidden to consider certain topics is plainly wrong. Indeed, given the conflict between the Supreme Court's view of the institution, as expressed in <u>Vasquez</u>, and the view expressed in the instructions, the instructions "judicial[ly] reshap[e] ... the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself." <u>Id.</u> <u>Williams</u> plainly forbids this "judicial reshaping" of the grand jury's role. <u>Id.</u> This error requires dismissal even if this Court accepts the <u>Marcucci</u> majority's dubious reading of the word "should" as employed in the instructions. By forbidding the grand jurors from considering the wisdom of a particular statute, or the desirability of a particular penalty, i.e., preventing them from fulfilling the role described in <u>Vasquez</u>, the instructions prevented the grand jury from performing its traditional function even if the instructions left "limited room ... for a grand jury to reject an indictment ... supported by probable cause." <u>Marcucci</u>, 299 F.3d at 1164. Even if the grand jurors' authority to choose not to indict was preserved, that preservation is meaningless given that the jurors are not permitted to entertain the considerations that would inform a decision to exercise

17

the powers not to indict or to indict on a lesser charge.

C. **The Instructions Demean the Independence of the Grand Jury By Falsely Informing the Grand Jurors That Probable Cause Has Already Been Determined By a Judge After a Non-Existent Hearing.**

The instructions erroneously state that the grand jury's job is merely to ratify a probable cause determination already made by a judge. In cases such as Mr. Garcia-Rosas's – he was arrested prior to the submission of her case to the grand jury -- the grand jurors are instructed that defendants "are taken before a magistrate judge, who then holds a preliminary hearing to determine whether there is probable cause to believe that the person has committed a crime." Empanelment at 5. Of course, there is no "preliminary hearing;" the magistrate judge's probable cause determination is undertaken ex parte. See Fed. R. Crim. P. 4(a) and 5(a).

But a grand juror, or course, would take the instructions as true, and believe that there has already been a probable cause determination, presumably after a hearing in which both parties participated, and that the defendant necessarily lost that battle. Empanelment at 5 ("[i]f the magistrate judge finds such probable cause, the judge will direct that the accused be held for the action of the Grand Jury so that you can consider whether there should be an indictment"). Thus, not only is the grand jury asked merely to ratify a legal professional's determination, it is led to believe that the determination was made after a proceeding far more fair than the one in which the grand jurors are involved because the grand jurors proceed without any input from the defense.

Again, in order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be independent of both the prosecuting attorney and the court. Wood, 370 U.S. at 390. If the instructions at issue in Marcucci were saved by their supposed fealty to the notion of grand jury independence, see Marcucci, 299 F.3d at 1163-64, then the instructions here obliterated that independence by setting up the grand jury as a rubber stamp for judicial probable cause determinations. Because Marcucci did not consider this fundamental flaw in the instructions, it does not control here.

D. **The Errors Created By the Defective Grand Jury Charge Are Structural.**

The Fifth Amendment grand jury right guarantees the "traditional functioning of the institution." Williams, 504 U.S. at 51. The misleading and inappropriate instructions alone should be sufficient to compel dismissal of the indictment because they suggest that the Grand Jury is not independent: grand

jurors are essentially told that their collective judgment as to the wisdom of a particular prosecution is irrelevant; they are forbidden to consider penalty information, even if they want to; and that their purpose is simply to ratify a decision already made by a judge. This sort of attack on grand juror independence is a structural error, permitting dismissal in the absence of a showing of prejudice. See Nova Scotia, 487 U.S. at 256-57 ("presumption of prejudice" allowed when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair"). Because the independence of the Grand Jury implicates a fundamental Fifth Amendment interest, see Stirone, 361 U.S. at 218 ("the very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge"), a structural error analysis must be applied.

Even if Mr. Garcia-Rosas has to demonstrate prejudice, he need only show that the erroneous instructions "substantially influenced the grand jury's decision to indict" or whether there is "grave doubt" that the decision to indict was free from the substantial influence" of the improper instructions. Nova Scotia, 487 U.S. at 256); accord United States v. Larrazolo, 869 F.2d 1354, 1358 (9th Cir. 1989).

## VI
## CONCLUSION

For the foregoing reasons, it is respectfully requested that this court grant the motions stated herein.

Dated: 6-26-03

Respectfully submitted,

DANIEL CASILLAS
Attorney for Defendant
SAUL GARCIA-ROSAS

19