USDC SCAN INDEX SHEET

Vanginderen v. Cornell University et al Doc. 11

















ANDY 8/5/03 14:54

3:03-CR-01463 USA V. RAMOS-VILLALOBOS

*10*

*CRRESPM.*

Dockets.Justia.com

ORIGINAL

CAROL C. LAM
United States Attorney
KEVIN M. MULCAHY
Assistant U.S. Attorney
California State Bar No. 211955
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-7179

Attorneys for Plaintiff
United States of America

FILED
03 AUG -4 AM 11:08
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

VICTOR RAMOS-VILLALOBOS,

Defendant.

Criminal Case No. 03CR1463-W

Date: August 11, 2003
Time: 2:00 p.m.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, MOTION FOR FINGERPRINT EXEMPLARS, AND MOTION FOR RECIPROCAL DISCOVERY

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, CAROL C. LAM, United States Attorney, and KEVIN M. MULCAHY, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motion to Compel Discovery, and files its Motion for Fingerprint Exemplars and Motion for Reciprocal Discovery for the above-referenced case. The Government's response and its motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//



# I.

# STATEMENT OF THE CASE

## A. The Instant Offense

On May 4, 2003, at approximately 2:00 a.m., agents from the Bureau of Customs and Border Protection ("BCBP") witnessed two individuals jump over the United States/Mexico boundary fence in an area known as "South Levee." This area is approximately one mile west of the San Ysidro Port of Entry. After jumping the fence, the two individuals attempted to conceal themselves by hiding in some brush approximately 10 yards north of the border. Agents approached the two individuals and identified themselves as federal agents. In response to routine immigration questions, the two individuals admitted to being citizens and nationals of Mexico without proper documentation to be in the United States. Victor Ramos-Villalobos ("Defendant") was later identified as one of the two individuals agents apprehended in South Levee that night.

After being arrested and placed in handcuffs, Defendant became very uncooperative in that he attempted to flee back to Mexico, attempted to head butt one of the agents, and was verbally abusive to the arresting officers. Ramos was eventually taken to the Imperial Beach Border Patrol Station for processing, but along the way he continued to be abusive to agents.

At the station, Defendant's fingerprints were entered into the Biometric Identification System (IDENT), which revealed an extensive criminal and immigration history. Even during this process, Defendant was uncooperative, attempting to smear the fingerprints taken by the agents. The records of the Department of Homeland Security also showed that Defendant had not received official authorization, or even applied for such authorization, to enter the United States after his deportation.

Defendant was read his rights per Miranda, and declined to answer questions without an attorney present.

On May 27, 2003, a federal grand jury returned a one-count Indictment charging Defendant with Attempted Entry after Deportation, in violation of 8 U.S.C. § 1326.

## B. Defendant's Criminal and Immigration History

Defendant has an extensive criminal record and four prior removals. On December 18, 1989, Defendant was convicted of Rape by Force, in violation of California Penal Code Section 261.2, and

sentenced to 3 years in prison. On August 16, 1999, Defendant was convicted of Infliction of Corporal Injury on a Spouse or Cohabitant, in violation of California Penal Code Section 273.5(a), and sentenced to thirty days in jail. Finally, on September 14, 2000, Defendant was convicted of failing to register as a sex offender, in violation of California Penal Code Section 290(g)(2), and sentenced to 180 days in jail and thirty-six months probation.

Defendant was ordered deported from the United States by an immigration judge on September 29, 1998. He has been physically removed on four separate occasions. As indicated above, record checks show that Defendant has not applied for, nor obtained, authorization from the Attorney General of the United States to enter into the United States.

**II.**

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

The Government will continue to recognize its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government has already produced 53 pages of discovery and one audio tape, and the Government will continue to provide all discoverable documentation and information going forward.

**1. Statement of Defendant**

The Government has produced arrest reports disclosing the substance of any oral and written statements of Defendant. To the extent it has not completely done so already, the Government will continue to produce discovery related to Defendant's statements made in response to questions by Government agents.

Any relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980). See also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996).

2. **Arrest Reports, Notes, Dispatch Tapes**

The Government has turned over all arrest reports in its possession. To the extent it learns of other reports, the Government will disclose such as soon as possible. The Government has been informed that no dispatch tapes exist in this case.

3. **Physical and Mental Examinations, Laboratory and Scientific Tests and Experiments**

The Government will comply with Rule 16(a)(1)(D) and (E) of the Federal Rules of Criminal Procedure and will allow defense counsel to inspect and copy or photograph, at a mutually convenient time, any results or reports of any scientific tests or experiments to which Defendant may be entitled under the specific provisions of these rules. Due to the early stage of this proceeding, such reports may not have been generated yet.

4. **The Government Will Comply With Its Obligation Under Brady v. Maryland**

The Government is aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. The defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to him, or which pertains to the credibility of the Government's case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775. See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (noting that the Government is not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (holding that Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

5. **Information that May Result in Lower Sentence**

Defendant claims that the Government must also disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

(1963). The Government respectfully contends that it has no such disclosure obligations under Brady.

The Government is not obliged under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure. There can be no violation of Brady if the evidence is already known to the defendant. In such case, the Government has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir.).

Assuming that Defendant did not already possess the information about factors which might affect his guideline range, the Government would not be required to provide information bearing on Defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." United States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

**6. Defendant's Record**

The Government has already disclosed Defendant's criminal record.

**7. Any Proposed 404(b) Evidence**

The Government is unaware of any Rule 404(b) evidence at this time.

**8. Evidence Seized**

The Government will produce, to the extent not already produced, copies of any evidence seized. For evidence that is not contained in documents, the Government will provide Defendant the opportunity to review the evidence upon reasonable request.

**9. Preservation of Evidence**

The Government will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.

**10. Documents and Other Tangible Objects**

Upon reasonable notice and in accordance with Federal Rules of Criminal Procedure 16(a)(1)(C), the Government will allow Defendant an opportunity to inspect, copy, and/or photograph all tangible evidence which is within the possession, custody, or control of the Government, and which is material to the preparation of the defense or intended for use by the Government as evidence in its case-in-chief or were obtained from or belong to Defendant.

11. **Evidence or Motive to Lie**

The Government also agrees to provide information related to the bias, prejudice, or other motivation of Government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959). In addition, the Government will disclose all impeachment material, if any, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial. See United States v. Bramble, 103 F.3d 1475 (9th Cir. 1996). At this time, the Government is unaware that prospective witnesses are biased or prejudiced against Defendant, or have a motive to falsify or distort their testimony.

12. **Giglio Information**

The Government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). The Government will also provide the criminal history and prior material acts of misconduct, if any, of its trial witnesses as mandated in Giglio.

13. **Evidence of Criminal Investigation of Any Government Witness**

Again, the Government is aware of, and will comply with, its obligations under Giglio, Henthorn, and similar case law. The Government is unaware at this time of any investigation into criminal conduct (or otherwise) of any of its potential witnesses.

14. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**

The Government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972), which includes any evidence that tends to show that the witness' ability to perceive, remember, communicate, or truth telling is impaired. At this time, the Government is not aware of any evidence that any Government witness' ability to perceive is impaired by the use of controlled substance or alcohol.

15. **Witness Addresses**

Although the Government will provide Defendant with the names of the witnesses it intends on calling at trial, there is no obligation for the Government to disclose the addresses of such witnesses. Therefore, the Government objects to this request and urges the Court not to order disclosure of the addresses of witnesses that will testify at trial.

16. Names of Witnesses Favorable to the Defendant

The Government is unaware of any witnesses "who made an arguably favorable statement concerning the defendant." See Defendant's Moving Papers at 8.

17. Statements Relevant to the Defense

The Government is unaware of any statements that may be relevant to a defense in this case.

18. Jencks Act Material

Production of witness statements is governed by the Jencks Act (18 U.S.C. § 3500) and need occur only after the witness testifies on direct examination. See United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623, F.2d 551, 556-57 (9th Cir. 1979).

Further, the Government reserves the right to withhold the statements of any particular witnesses it deems necessary until after they testify. Otherwise, the Government will disclose the statements of witnesses, if it has not already done so, no later than five days prior to trial, provided that defense attorney complied with his obligations under Federal Rules of Criminal procedure 12.1, 12.2, 16, and 26.2 and provided that defense attorney will turn over all "reverse Jencks" statements at that time.

19. Giglio Information

This request has been addressed above.

20. Henthorn Review

The Government will review the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. The Government will request that counsel for the Department of Homeland Security's Bureau of Customs and Immigration Enforcement conduct such review. See United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the Government agrees to "disclose information favorable to the defense

that meets the appropriate standard of materiality . . . ." Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

**21. Expert Witnesses**

Defendant requests notice and a written summary of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(D). The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Rules 702, 703, or 705 of the Federal Rules of Evidence.

**23-42. Informants and Cooperating Witnesses**

The Government is not aware of any informant or cooperating witness in this case at this time.

## III.

## UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY AND FINGERPRINT EXEMPLARS

### A. Government's Motion for Reciprocal Discovery

**1. Rule 16(b)**

Defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for discovery and the Government has already voluntarily complied with the requirements of Federal Rule of Criminal Procedure 16(a). Therefore, Rule 16(b) should presently be determined to be operable as to Defendant.

The Government, pursuant to Rule 16(b), hereby requests that Defendant permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody, or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial. The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the Government receives the discovery to which it is entitled.

2. **Rule 26.2**

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except any statement of Defendant. The rule provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. Therefore, the Government hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including, but not limited to, tape recordings, handwritten or typed notes, and/or reports.

**B. The Government's Motion for Fingerprint Exemplars**

As part of its case, the Government must prove that Defendant was previously deported from the Untied States. To prove this element, the Government anticipates calling a certified fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of deportation and other deportation documents. A number of chain of custody witnesses could be eliminated, and judicial resources conserved, by permitting the Government's expert to take Defendant's fingerprints himself. The Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S. 757 (1966). Further, using identifying physical characteristics, such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge, 676 F.Supp. 1041, 1043 (D. Mont. 1987). Accordingly, the Government requests that the Court order that Defendant make himself available for fingerprinting by the Government's fingerprint expert.

## IV.

## CONCLUSION

For the above stated reasons, the Government respectfully requests that Defendant's motions be denied, except where unopposed. Further, the Governments respectfully requests that its motions be granted.

DATED: August 4, 2003

Respectfully submitted,

CAROL C. LAM
United States Attorney

KEVIN M. MULCAHY
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VICTOR RAMOS-VILLALOBOS,<br>Defendant. | Criminal Case No. 03CR1463-W<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Lori Padilla, am a citizen of the United States over the age of 18 years and a resident of San Diego County, California; my business address is 880 Front Street, Room 6293 San Diego, California 92101-8800; I am not a party to the above-entitled action, I deposited in the United States mail at San Diego, California, in an envelope bearing the requisite postage, a copy of

GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY, MOTION FOR FINGERPRINT EXEMPLARS

to: **J. W. Carver, Esq.**
**1010 Second Ave., Suite 1000**
**San Diego, California 92101**

the last known address, at which place there is delivery service of mail from the United States Postal Service. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2003

Lori Padilla